22 Cal.App.4th 873 (1994)
28 Cal. Rptr.2d 16
ESTATE OF L.O. IVEY, Deceased.
HELEN TRUE PURCELL et al., Petitioners and Respondents,
v.
SHARON PURCELL DILEONARDO, Contestant and Appellant.
Docket No. B074041.
Court of Appeals of California, Second District, Division Four.
February 17, 1994.
*877 COUNSEL
Joseph W. DiLeonardo for Contestant and Appellant.
Brobeck, Phleger & Harrison, Edmond R. Davis, John A. Payne, Jr., and David M. Bassham for Petitioners and Respondents.
OPINION
VOGEL (C.S.), J.
The decedent L.O. Ivey established a trust in his will. Appellant Sharon Purcell DiLeonardo is a one-sixth beneficiary of the income from the trust. Respondents Helen True Purcell, Lauri Ann Prati, and Michael L. Purcell are the other five-sixths beneficiaries of the trust income. Wells Fargo Bank is the trustee.
Appellant filed objections to the trustee's third account. The court summarily adjudicated that appellant's objections lacked merit, and settled and approved the third account. The order approving the third account is the subject of a separate appeal. We have affirmed that order in an unpublished opinion, Estate of Ivey (Feb. 17, 1994) B069459.
The trustee and respondents, the other income beneficiaries, instituted proceedings in the trial court (a motion under Code Civ. Proc., § 128.5, and *878 a petition for instructions to the trustee under Prob. Code, § 17200) seeking a determination that appellant's opposition to the third account was frivolous and in bad faith, and that appellant's share of trust income be charged with the expenses and attorney fees incurred by them in responding to appellant's objections.
Based on appellant's refusal to comply with discovery relating to her knowledge of certain prior proceedings, the court entered an "issue sanction" that all of appellant's objections to the third account were without merit. (Code Civ. Proc., § 2023, subd. (b)(2).) Based on the issue sanction and other evidence, the court found that appellant's objections to the third account were frivolous and in bad faith. The court determined that sanctions should be awarded pursuant to Code of Civil Procedure section 128.5, and that it would be inequitable to the other income beneficiaries to have the trustee's expenses borne by the trust as a whole. The court found that respondents Helen True Purcell, Lauri Ann Prati, and Michael L. Purcell incurred reasonable expenses and attorney fees of $203,475 as a result of appellant's objections, and that the trustee incurred reasonable expenses and attorney fees of $147,041 as a result of appellant's objections. Pursuant to Probate Code section 17200, the court instructed the trustee to pay those amounts to respondents and itself out of future distributions from the trust to which appellant Sharon Purcell DiLeonardo would otherwise be entitled.
Appellant appeals from these orders (Prob. Code, § 17207), raising a variety of contentions. We affirm.

I

DISCOVERY SANCTION
(1) The main point raised by appellant in opposition to the third account in 1991 was that the trustee in 1983 should have opposed a petition, by the conservator of the decedent's widow, to establish a probate homestead for life. Appellant contended that appellant's late raising of this claim was excused by "extrinsic fraud" and an alleged conflict of interest of the lawyers (the Johnson law firm) who then represented the trustee. As part of discovery relevant to appellant's knowledge of prior probate proceedings, respondents sought to compel appellant to produce all correspondence with the executor, all documents relating to the estate and the trust, and all documents relating to the conservatorship. Despite a court order compelling production, appellant did not produce these documents.
Contrary to appellant's contentions, these documents would have been highly relevant to appellant's actual knowledge of the probate homestead *879 petition and hence might have conclusively shown the lack of merit to her claim of extrinsic fraud. Two such documents came to light despite appellant's initial stonewalling, an exchange of correspondence between appellant and the then trustee showing that in 1983 appellant was aware of the possibility of a probate homestead and had no objection to it if the home would revert to the trust upon the death of decedent's widow. As pointed out by respondents, appellant's refusal to make discovery means that no one will know what other documents appellant had in her possession conclusively showing her notice or knowledge of the probate homestead petition. The trial court did not abuse its discretion in concluding the appropriate sanction was an issue sanction finding that appellant's objections were without merit and that appellant's claims of conflict of interest were barred by res judicata or were untimely. (Code Civ. Proc., § 2023, subd. (b)(2); Kuhns v. State of California (1992) 8 Cal. App.4th 982, 988-989 [10 Cal. Rptr.2d 773].) Appellant suggests the issue sanction was overly broad in finding that all of appellant's objections to the third account were without merit, based on appellant's refusal to make discovery relevant to the probate homestead and extrinsic fraud objections. This is not persuasive, because in response to the trustee's prior motion for summary adjudication of appellant's objections appellant addressed only the homestead/extrinsic fraud issue, abandoning other objections.

II

MOTION IN LIMINE
Just prior to trial, appellant moved to exclude evidence of appellant's previous assertions of conflict of interest on the part of the Johnson law firm. The trial court declined to rule on appellant's motion in limine.
(2) Appellant was not prejudiced by the court's failure to rule, because the motion was without merit. Appellant's motion was based on a theory that the order approving the executor's first and final account in 1984 either expressly or impliedly found that appellant's then allegations of conflict of interest were not frivolous, therefore the issue was res judicata. That argument was misconceived, because the evidence was not admitted to relitigate the merits of the 1983 allegations, but only to show appellant's state of mind in 1991 in light of her long-standing animosity toward the Johnson law firm.

III

"FAIR TRIAL"
Under a heading alleging denial of a fair trial, appellant raises three issues relating to appellant's motions to transfer venue or administration of the trust *880 to Sonoma County and the trial court's lack of recall of deposition testimony. There is no merit to these contentions.
(3) The proper venue is where the principal place of administration of the trust is located. (Prob. Code, § 17005, subd. (a)(2).) This means the usual place where the day-to-day activity of the trust is carried on by the trustee or its representative who is primarily responsible for administration of the trust. (Prob. Code, § 17002, subd. (a).) This was Los Angeles. The fact that appellant resided in Sonoma County did not give her the right to change venue under the general rule of Code of Civil Procedure section 395, subdivision (a). That section begins, "Except as otherwise provided by law...." Here, Probate Code section 17005 defined the proper venue. In any event, appellant's motion for change of venue, filed more than six months after filing of her opposition to the petition to charge her share of the estate was untimely. (Code Civ. Proc., § 396b, subd. (a).)
(4) Insofar as appellant sought to transfer administration of the trust pursuant to Probate Code section 17304, the motion was properly denied for lack of any evidence that such transfer "will be in the best interests of the estate, or the economical and convenient administration of the trust will be facilitated by the transfer." (Prob. Code, § 17304, subd. (c).)
(5) Finally, appellant cites a remark of the trial judge at the end of the trial to the effect that the judge did not recall reading depositions, which contradicted the judge's remark at the beginning of trial that he had read portions of depositions. Appellant asserts she was denied a fair trial if the court rendered a decision on less than all of the evidence. There is no merit to this contention because the trial was bifurcated, the portions of depositions were admitted in the liability stage, which had previously been decided, and were not relevant to the damages stage when the court had the failure of recollection. Moreover, the context of the remark shows the court merely rejected appellant's suggestion that the entire depositions be included in an appellate record, since only portions had been admitted.

IV

AWARD OF SECTION 128.5 SANCTIONS
Upon trial of the motions for sanctions under Code of Civil Procedure section 128.5, the trial court found that appellant's objections to the trustee's third account were frivolous and in bad faith, and that as a direct result of appellant's objections, respondents incurred reasonable attorney fees and expenses of $203,475, and the trustee incurred reasonable attorney fees and expenses of $147,041.
*881 We briefly summarize the trial court's findings: There is a long-standing animosity between appellant and the Johnson law firm which represented the trustee, going back to the early 1980's when appellant began asserting that the Johnson law firm had a conflict of interest. Sanctions were not awarded for the prior disputes, which were considered only for the purpose of showing this long-standing course of dealing. Appellant's objections to the third account in 1991 primarily rehashed matters which she had known for years, which were barred by res judicata and statute of limitations, and were asserted in bad faith. Appellant had actual knowledge in 1983 of the plans for a probate homestead for Myrtle Ivey, decedent's aged widow, and communicated to Stewart Semple, vice-president of Crocker National Bank, which was then executor and trustee, that she had no objection to the probate homestead on certain conditions, which were satisfied. Appellant attempted to conceal these communications by her refusal to make discovery. Appellant initially raised 11 grounds for her objections to the third account but, in response to the trustee's motion for summary adjudication, addressed only the conflict of interest/extrinsic fraud issue, eventually abandoning all other objections. "Based upon all of the evidence presented at the trial, Sharon DiLeonardo's failure to explain or deny by her testimony the evidence in the case against her, the matters of which judicial notice was taken, and the Court's prior issue-preclusion sanction, the Court finds: each and all of Sharon DiLeonardo's Objections to the Third Account were frivolous; she knew that her Objections to the Third Account were frivolous; she knew that the Third Account was proper; she would have objected to essentially anything that was included within the Third Account; that each and all of her Objections to the Third Account were totally and completely without merit; that each and all of her Objections to the Third Account were made in bad faith; that each and all of her Objections to the Third Account were made for the sole purpose of harassing opposing parties; that each and all of her Objections to the Third Account were made willfully and maliciously to injure the trustee or the beneficiaries of the Trust; that each and all of her Objections to the Third Account were intended by her to be punishment and vindictive; that Sharon DiLeonardo's bad faith was compounded by her stonewalling on discovery; and that she willfully suppressed material evidence."
(6a) Appellant raises various issues about the sanctions award, which amount to contentions that the evidence is insufficient to support the award or that the trial court abused its discretion. (7) On appeal, our function is limited to determining if there is any substantial evidence to support the trial court's order. We may not reweigh the evidence or substitute our discretion for that of the trial judge. (Tenderloin Housing Clinic, Inc. v. Sparks (1992) 8 Cal. App.4th 299, 303-304 [10 Cal. Rptr.2d 371]; 580 Folsom Associates v. *882 Prometheus Development Co. (1990) 223 Cal. App.3d 1, 20 [272 Cal. Rptr. 227].) We conclude substantial evidence supports the trial court's order.
(6b) The evidence supports the trial court's conclusion that witnesses Andrew Garb and Susan Boling had sufficient familiarity with the billings to testify which bills were related to appellant's objections to the third account; the court did not allow the items as to which it was not satisfied in that regard.
The evidence supports the trial court's conclusion that the bills of Irving Goldring, the attorney appointed guardian ad litem, and of the attorneys Ross & Sacks, the attorneys appointed to represent Goldring for litigation, were directly related to appellant's objections to the third account.
The evidence supports the trial court's conclusion that the bills of respondents' attorneys Brobeck, Phleger & Harrison, and the bills of the trustee's attorneys Loeb and Loeb, were directly related and reasonably necessary as a result of appellant's objections to the third account. The role of respondents' attorneys in supporting and supplementing the efforts of the trustee's attorneys was explained.
The evidence of appellant's bad faith was sufficient. In addition to the issue sanction, the court considered the prior animosity between appellant and the Johnson law firm, appellant's withdrawal of her other objections to the third account, appellant's deposition testimony, and appellant's failure to testify at trial. The issue sanction conclusively determined that appellant's objections concerning the probate homestead, conflict of interest, and extrinsic fraud were without merit, but did not prevent appellant from presenting evidence of good faith. Appellant offered portions of depositions of Helen True Purcell and Lauri Ann Prati, but their lack of knowledge about the legal basis for the claim of bad faith did not compel the court to reject the other strong evidence of bad faith. Appellant contends the court "dwelled" on her conflict of interest/extrinsic fraud objection, but this does not show abuse of discretion, because in response to the trustee's motion for summary adjudication of appellant's objections, appellant addressed only the extrinsic fraud issue and abandoned the others.

V

CHARGING APPELLANT'S INCOME SHARE OF THE TRUST
(8) The probate court's order instructing the trustee (Prob. Code, § 17200) provides that the trustee pay the sanction amounts out of future *883 distributions from the trust to which appellant would otherwise be entitled. The court based its order on the court's equitable powers, finding that it would be inequitable to the other income beneficiaries to have the expenses borne by the trust as a whole.
The court's order is supported by Conley v. Waite (1933) 134 Cal. App. 505, 506 [25 P.2d 496], which states, "... when an unfounded suit is brought against [the trustee] by the cestui que trust, attorney fees may be allowed him in defending the action and may be made a charge against the interest in the estate of the party causing the litigation." Conley was followed in Estate of Lair (1942) 52 Cal. App.2d 222, 225-226 [126 P.2d 133].
That a probate court has equitable power to charge one beneficiary's share of a trust for frivolous litigation against the trust is supported by treatises. "Courts having jurisdiction over trust administration have the power to allocate the burden of certain trust expenses to the income or principal account and not infrequently do so in connection with accountings or suits relating to the administration of the trust. Sometimes this authority is stated in statutory form, but it exists as a part of the inherent jurisdiction of equity to enforce trusts, secure impartial treatment among the beneficiaries, and to carry out the express or implied intent of the settlor." (Bogert, Trusts and Trustees (rev. 2d ed. 1981) § 802, pp. 143-144, fns. omitted.) "Where the expense of litigation is caused by the unsuccessful attempt of one of the beneficiaries to obtain a greater share of the trust property, the expense may properly be chargeable to that beneficiary's share." (Fratcher, Scott on Trusts (4th ed. 1988) § 188.4, p. 69, fn. omitted. See also Annot. (1950) 9 A.L.R.2d 1132, 1236, § 28.)
The two California authorities on which respondents rely, Conley v. Waite, supra, 134 Cal. App. 505, and Estate of Lair, supra, 52 Cal. App.2d 222, involve the legal expenses incurred by the trustee defending unfounded litigation. A separate issue here is whether the legal expenses of the other beneficiaries in defending the trustee's accounting and opposing appellant's objections may also be charged against appellant's share of the trust income. Respondents' position is supported by two Illinois cases. In Patterson v. Northern Trust Co. (1919) 286 Ill. 564 [122 N.E. 55], the plaintiff life beneficiary of a one-twelfth interest brought suit against the trustee and another beneficiary. The trustee and the other beneficiary filed separate defenses and separately incurred legal fees. The court recognized the rule that "Where a beneficiary brings a suit against his trustee which is groundless, the solicitor's fees and expenses of the trustee in defending the charge are to be paid out of the share of the complainant in the trust estate, and not charged against the estate generally nor a general fund by which cobeneficiaries would have to contribute." (122 N.E. at p. 56.) The court opined that *884 "we see no reason why a court of equity may not likewise protect a beneficiary from such an assault as was made in this case by charging solicitor's fees against Patterson's share." (Id. at p. 57, italics added.) The court explained "There is an estate and fund in which Patterson has an interest as a beneficiary, and in the settlement of accounts the court may protect the fund and trustee and all the beneficiaries in the administration and distribution of the fund." (Ibid., italics added.) The court held, however, that the award was not authorized by statutory authority as "costs." (Ibid.) Patterson was followed in Webbe v. First Nat. Bank and Trust Co. (1985) 139 Ill. App.3d 806 [93 Ill.Dec. 886, 487 N.E.2d 711]. There, the plaintiff and his two brothers were the life beneficiaries of the trust. The brothers were represented by separate counsel in opposition to the plaintiff's groundless suit against the trustee. On the basis of Patterson, the court held that not only the trustee's legal expenses but also the separate legal expenses incurred by the brothers were chargeable to the plaintiff's share of the trust. (487 N.E.2d at pp. 714, 715.) The court went on to hold that a separate judgment against the plaintiff personally was not supported by the evidence under a strict construction of the applicable vexatious litigation statute. (Id. at p. 715.)
We are persuaded that pursuant to its equitable powers and authority over the administration of the trust, the probate court could provide that the reasonable and necessary legal fees incurred by respondents in opposing appellant's frivolous bad faith attacks on the trustee's accounting may be made payable out of appellant's share of the trust. Otherwise, a beneficiary with no substantial separate assets could engage in frivolous bad faith litigation against the trust, contrary to the interests of the remaining beneficiaries, knowing that the other beneficiaries would have to bear the ultimate cost of protecting their own interests. This would be inequitable. (Webbe v. First Nat. Bank and Trust Co., supra, 487 N.E.2d at p. 714.)
Appellant contends the trial court's order is inconsistent with Estate of Beach (1975) 15 Cal.3d 623, 645-646 [125 Cal. Rptr. 570, 542 P.2d 994]. Beach is distinguishable. There, an executor successfully defended a contest by some beneficiaries concerning the executor's handling of investments. The Beach trial court held that the executor's attorney fees could be charged to the contestant's shares of the estate as "costs." The Supreme Court's reversal of that order is distinguishable from the instant case in several ways: (1) the result was held compelled by the specific language of former Probate Code section 750, which is not involved here; furthermore, the probate court is now considered a court of general jurisdiction with equitable powers (Prob. Code, § 7050, and Law Revision Commission comment thereto); (2) the Beach trial court's order was contrary to the usual rule that ordinarily a prevailing party is not entitled to attorney fees as costs (Code Civ. Proc., *885 § 1021); and (3) the Beach trial court's approach "would unduly deter contestants such as these from questioning the stewardship of executors and administrators through proceedings brought in good faith." (15 Cal.3d at p. 646, italics added.) Here, on the other hand, the order is not based on costs in good faith litigation; rather, the court determined that appellant's objections to the trustee's third account were frivolous and brought in bad faith, under the standards of Code of Civil Procedure section 128.5, which was enacted after Beach.
Pointing out that the trust has spendthrift provisions preventing the beneficiaries from encumbering their shares to the claims of creditors, appellant next contends that respondents are judgment creditors who are required to treat the probate court's order as an ordinary judgment and then enforce their judgment pursuant to Code of Civil Procedure section 709.010, and subject to the severe limitations of Probate Code sections 15300 and 15306.5. Under the latter, a spendthrift beneficiary's trust income is subject to satisfaction by judgment creditors only to a maximum of the lesser of 25 percent of the amount that would otherwise be payable to the beneficiary, or the amount the court determines necessary for the support of the beneficiary and all the persons the beneficiary is required to support.
We conclude respondents were entitled to assert these claims directly in the circumstances of this proceeding, independent of the statutory procedures applicable to ordinary judgment creditors. The award of sanctions here, although based on Code of Civil Procedure section 128.5, was made in the context of a probate proceeding involving administration of this very trust. It was appellant's bad faith conduct toward the administration of this trust which caused unnecessary expenses to be incurred. Under the court's equitable supervision of the trust, the court may order the sanctions payable from appellant's share. In De Mille v. Ramsey (1989) 207 Cal. App.3d 116 [254 Cal. Rptr. 573], two sisters agreed to share equally their mother's inheritance regardless how their mother might treat them in the will. The court held that such agreement was enforceable in equity so that the plaintiff sister could receive half, and rejected a contention that Probate Code section 15306.5 applied so as to limit the judgment. "We have concluded that the court's enforcement order does not defeat the testator's intent and violates no public policy. No purpose would be served by imposing the restrictions contained in these sections." (207 Cal. App.3d at p. 127.) In In re Ungrich (1911) 201 N.Y. 415 [94 N.E. 999, 1000], the court noted the usual statutory limit on the ability of judgment creditors to reach inalienable trust income, but held the trustees were entitled in equity to be reimbursed from the contestant's share of the trust. "If these expenses were rendered necessary by the unwarranted action of the life tenant, they should not all be charged *886 against the corpus of the estate, but should, in part or whole, be charged against the life tenant whose act had occasioned the expense. Though the beneficiary of a trust, such as the one before us, may not alienate or assign it, still he may subject it to a claim for legal services to enforce his rights [citation]; so, also, his wrongful conduct may result in affecting that income." (Ibid.)
So here, to conclude that Probate Code section 15306.5 applies would inequitably require that respondents bear most of the cost of appellant's conduct toward the trust. Although decedent intended to protect the beneficiaries from folly toward other creditors, he undoubtedly did not intend that one beneficiary, through wilful, frivolous, and bad faith conduct toward the trust, could with near impunity require the other income beneficiaries to deplete the distributable trust income on unnecessary legal expenses. In other words, to allow appellant an economic advantage to pursue frivolous litigation necessarily reduces the trust income available to the other beneficiaries. It is inconceivable that L.O. Ivey contemplated or would tolerate such a bizarre and unjust result.

VI

DISPOSITION
The orders appealed from are affirmed.
Epstein, Acting P.J., and Hastings, J., concurred.
Appellant's petition for review by the Supreme Court was denied April 27, 1994.