[No. F056587. Fifth Dist. Dec. 2, 2009.]

OSCAR RUDNICK, as Trustee, etc., Plaintiff and Respondent, v. PHILIP RUDNICK et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts 2. and 3. of the discussion.

**COUNSEL**

Law Offices of Ralph B. Wegis, Ralph B. Wegis, Michael J. Stump; Daniel Rudnick; and Barry Rosenberg for Defendants and Appellants.

Steptoe & Johnson, Richard G. Reinis, Rebecca Edelson; Lynch & Lynch, Craig M. Lynch; McCormick, Barstow, Sheppard, Wayte & Carruth, D. Greg Durbin and Todd W. Baxter for Plaintiff and Respondent.

**OPINION**

**LEVY, Acting P. J.**—Appellants, Philip Rudnick, Robert Rudnick, and Milton Rudnick, are three of the beneficiaries of the Rudnick Estates Trust (RET) and hold a minority interest. Respondent, Oscar Rudnick, is the trustee of the RET. After the majority of the RET beneficiaries approved the sale of the RET's principal asset, the Onyx Ranch, respondent petitioned the probate court for instructions requesting approval of both the sale and the proposed distribution. Appellants opposed this petition.

The probate court concluded that appellants' opposition was primarily for the purpose of causing unnecessary delay in the sale and was in bad faith. The court then awarded approximately $226,000 in attorney fees and costs to respondent and ordered these fees charged against appellants' future trust distributions.

Appellants contend the probate court's order should be reversed because the court had neither equitable nor statutory authority to make this award. However, contrary to appellants' position, the probate court, as a court sitting in equity, had the authority to charge the awarded fees against appellants' trust interests. Accordingly, the order will be affirmed.

## BACKGROUND[1]

The RET was created in 1965 by the beneficiaries of 11 separate trusts. These trusts each owned an undivided interest in various real property and business entities and were managed as an integrated enterprise. The purpose of the RET was to liquidate the trusts' assets and distribute the proceeds to the beneficiaries. This was to be accomplished by December 31, 1974. Under the RET agreement, any sale or disposition of a particular trust asset, once negotiated by the trustee, had to be approved by a majority of the beneficial shares in order to become effective.

Despite the expiration of the trust term, this court held in 1999 that the RET would continue to exist for a reasonable time until either the assets were sold or a majority of the beneficiaries elected to terminate the trust. (*Rudnick v. Rudnick* (May 25, 1999, F027453) [nonpub. opn.].) Although many of the RET assets were liquidated before 2008, the RET's major asset, the 68,000-acre Onyx Ranch, remained unsold.

In January 2007, respondent began the process of selling the Onyx Ranch. Various offers from potential investors were received and presented to the RET beneficiaries at noticed meetings.

In November 2007, the beneficiaries were given drafts of an agreement for the sale of the Onyx Ranch to CIM Acquisition Group (CIM) for $48 million. Appellants made it known to all beneficiaries that they opposed this sale.

In January 2008, appellants filed an application for an ex parte appointment of a temporary trustee and a petition to enjoin the sale of the Onyx Ranch to CIM and remove the trustee. The hearing on this application and petition was scheduled for February 26, 2008.

---

[1] Appellants' and respondent's requests that this court judicially notice the records pertaining to previous related proceedings are granted.

On February 11, 2008, the beneficiaries met to hear presentations from CIM, Padoma Wind Power (Padoma), and Mitchell Ashe, the RET's certified public accountant. All beneficiaries were provided with the final purchase and sales agreement from CIM and a lease proposal for the development of a wind energy project from Padoma. At the end of the meeting a vote was taken. The beneficiaries voted to accept the CIM offer, with 60 percent in favor and 40 percent opposed. Although some beneficiaries, including appellants, favored the wind energy project concept, the beneficiaries voted 100 percent against approving the proposed Padoma lease. On February 20, 2008, the beneficiaries voted by ballot to approve the CIM sale.

Despite the February 11, 2008, beneficiary vote, appellants did not withdraw their application for an ex parte appointment of a temporary trustee and petition to enjoin the Onyx Ranch sale until February 22, 2008.

On February 21, 2008, respondent filed a petition in the probate court to obtain instructions to consummate the Onyx Ranch sale to CIM as required by the purchase and sales agreement and to approve a distribution of proceeds in accordance with the Ashe accounting. The purchase and sales agreement provided that if it was not approved by the court on or before May 4, 2008, the agreement would terminate. The hearing on this petition was set for April 3, 2008. However, appellants filed an ex parte application to vacate the April 3 date.

On April 17, 2008, appellants filed objections to the petition for instructions. According to appellants, the RET assets were worth substantially in excess of $48 million, the transaction violated respondent's fiduciary duty, and the transaction violated the terms of the RET.

The hearing on the objections commenced on April 21 and took over eight days. On May 2, 2008, the court ruled in respondent's favor and instructed him to consummate the sale.

Thereafter, respondent filed a motion to recover the attorney fees and costs incurred in connection with the petition for instructions and to charge that amount to appellants' future distributions from the RET based on appellants' bad faith conduct in opposing the petition. The probate court granted respondent's motion in the amount of $226,295.16 and ordered these fees charged to appellants' future trust distributions as requested.

The court concluded that appellants' opposition to the petition was not made in good faith. Rather, appellants' primary motivation in opposing the petition was to disrupt the sale by preventing respondent from closing by the due date. The court found that appellants created unnecessary delays and

asserted disingenuous arguments causing the RET to incur significant legal expenses. Under these circumstances, the court concluded that it was not fair to burden the majority beneficiaries, who approved the sale of the Onyx Ranch to CIM in accordance with the terms of the RET, with the payment of these fees. The court noted that it appeared that appellants were either unwilling or incapable of understanding that they did not own the RET assets to the exclusion of the other beneficiaries. Appellants were partial owners who agreed many years ago that, in liquidating the RET assets, the majority of the beneficiaries would determine the conditions of such liquidation. Accordingly, appellants' "refusal to follow the protocol they agreed to cannot result in detriment to the other beneficiaries without consequences."

## DISCUSSION

1. *The court had the equitable power to make the attorney fees award.*

■ Appellants contend the probate court could not award attorney fees as costs or sanctions absent statutory authority or contract and thus the award was prohibited as a matter of law. Appellants rely on *Bauguess v. Paine* (1978) 22 Cal.3d 626 [150 Cal.Rptr. 461, 586 P.2d 942], wherein the California Supreme Court held that, apart from situations authorized by statute, attorney fees may not be awarded as a sanction under the trial court's *supervisory* power. This inherent supervisory power permits a court to take appropriate action to secure compliance with its orders, to punish contempt, and to control its proceedings. (*Id.* at p. 637.) The court reaffirmed this rule in *Olmstead v. Arthur J. Gallagher & Co.* (2004) 32 Cal.4th 804, 809 [11 Cal.Rptr.3d 298, 86 P.3d 354].

However, this award was not made under the probate court's *supervisory* power. Rather, it was made under the broad *equitable* powers that a probate court maintains over the trusts within its jurisdiction. (*Hollaway v. Edwards* (1998) 68 Cal.App.4th 94, 99 [80 Cal.Rptr.2d 166].)

■ It should first be noted that the attorneys hired by a trustee to aid the trust are entitled to reasonable fees paid from the trust assets. (*Kasperbauer v. Fairfield* (2009) 171 Cal.App.4th 229, 235 [88 Cal.Rptr.3d 494].) This includes attorney fees incidental to litigation that benefits the trust. (*Thomas v. Gustafson* (2006) 141 Cal.App.4th 34, 44 [45 Cal.Rptr.3d 639].) Further, the RET agreement itself provides that all expenses incurred by the trustee in administering or protecting the trust shall be a charge upon the trust estate. Thus, the attorney fees and costs incurred by the trustee in defending the petition for instructions are chargeable to trust assets.

Appellants do not dispute that the subject attorney fees and costs are payable from the trust. Appellants' objection is to the fact that this burden has been shifted entirely to their share of the trust estate.

The probate court charged the attorney fees to appellants' future trust distributions rather than the trust as a whole because it concluded that it would be unfair to burden the majority beneficiaries with the payment of the fees that were incurred in responding to appellants' bad faith opposition to the Onyx Ranch sale. Contrary to appellants' position, such an order is authorized by the probate court's equitable powers and authority over the administration of the trust. (*Estate of Ivey* (1994) 22 Cal.App.4th 873, 884 [28 Cal.Rptr.2d 16].)

■ This rule was succinctly stated by the court in *Conley v. Waite* (1933) 134 Cal.App. 505 [25 P.2d 496]. "[W]hen an unfounded suit is brought against [the trustee] by the *cestui que trust*, attorney's fees may be allowed him in defending the action and may be made a charge against the interest in the estate of the party causing the litigation." (*Id.* at p. 506.) The court in *Estate of Ivey* followed *Conley v. Waite* and further noted, "That a probate court has equitable power to charge one beneficiary's share of a trust for frivolous litigation against the trust is supported by treatises." (*Estate of Ivey, supra*, 22 Cal.App.4th at p. 883.) As examples, the *Ivey* court quoted Bogert, Trusts and Trustees (rev. 2d ed. 1981) and Fratcher, Scott on Trusts (4th ed. 1988) as follows: " 'Courts having jurisdiction over trust administration have the power to allocate the burden of certain trust expenses to the income or principal account and not infrequently do so in connection with accountings or suits relating to the administration of the trust. Sometimes this authority is stated in statutory form, but it exists as part of the *inherent jurisdiction of equity to enforce trusts*, secure impartial treatment among the beneficiaries, and to carry out the express or implied intent of the settlor.' [Citation.] 'Where the expense of litigation is caused by the unsuccessful attempt of one of the beneficiaries to obtain a greater share of the trust property, the expense may properly be chargeable to that beneficiary's share.' [Citations.]" (*Estate of Ivey, supra*, 22 Cal.App.4th at p. 883, italics added.) ■ Thus, under established law, the probate court's order charging attorney fees to appellants' future trust distributions was permissible pursuant to its equitable supervision of the RET.[2]

Appellants argue that *Estate of Ivey* is distinguishable because there, unlike here, the motion for attorney fees as sanctions was brought under Code of

---

[2] Similarly, based on the probate court's equitable powers alone, it has been held that beneficiaries who have incurred attorney fees, either to vindicate their position as beneficiaries (*Wells Fargo Bank v. Marshall* (1993) 20 Cal.App.4th 447, 458 [24 Cal.Rptr.2d 507]) or for the benefit of the trust (*Estate of Reade* (1948) 31 Cal.2d 669, 672 [191 P.2d 745]), are entitled to have those fees paid by the trust.

Civil Procedure section 128.5. Nevertheless, in *Estate of Ivey*, the appellate court upheld the attorney fee award pursuant to the probate court's equitable powers and authority over the administration of the trust.

■ Further, appellants contend that the rule set forth in *Conley v. Waite, supra*, 134 Cal.App. 505 did not survive *Bauguess v. Paine, supra*, 22 Cal.3d 626 and *Estate of Beach* (1975) 15 Cal.3d 623 [125 Cal.Rptr. 570, 542 P.2d 994]. However, as discussed above, the issue in *Bauguess v. Paine* was whether a trial court, not sitting in probate, could award attorney fees as a sanction under its *supervisory* power. Here, the award was made pursuant to the probate court's broad equitable powers. Moreover, the *Bauguess* court affirmed that a court's equitable powers are distinguishable from its supervisory powers when the court noted that "Courts have used their inherent equitable power in limited situations to award attorney's fees when it was warranted by the equities of the case." (*Bauguess v. Paine, supra*, 22 Cal.3d at p. 636.)

*Estate of Beach, supra*, 15 Cal.3d 623 is also distinguishable from the situation here. In *Estate of Beach*, an executor successfully defended a contest filed by three out of the four beneficiaries of a testamentary trust. The California Supreme Court reversed the trial court's order charging the executor's attorney fees against the contestants' share of the trust on the ground that the trial court had exceeded its authority. (*Id.* at p. 645.) However, in *Estate of Beach* there was no finding that the contest had been filed in bad faith. Rather, the court concluded, "A contrary rule would unduly deter contestants such as these from questioning the stewardship of executors and administrators through *proceedings brought in good faith*." (*Id.* at p. 646, italics added.) In contrast, the court in *Conley v. Waite, supra*, 134 Cal.App. 505 charged the fees against the share of the beneficiary who brought an "unfounded suit." (*Id.* at p. 506.)

■ In sum, when a trust beneficiary instigates an unfounded proceeding against the trust in bad faith, a probate court has the equitable power to charge the reasonable and necessary fees incurred by the trustee in opposing the proceeding against that beneficiary's share of the trust estate.

2., 3.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 1328.

## DISPOSITION

The order is affirmed. Costs on appeal are awarded to respondent.

Kane, J., and Poochigian, J., concurred.

Appellants' petition for review by the Supreme Court was denied February 18, 2010, S179383.