Filed 9/21/16  Tyler v. Davis CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MARY TYLER et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> BILLY E. DAVIS et al., <br><br> Defendants and Respondents. | D069463 <br><br><br> (Super. Ct. No. 37-2008-00150792-PR-TR-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Julia C. Kelety, Judge.  Dismissed in part, affirmed in part

John L. Dodd & Associates, John L. Dodd and Benjamin Ekenes, for Plaintiffs and Appellants.

Goodwin Brown Gross & Lovelace, James J. Brown and Gina D. Stein, for Defendant and Respondent Billy E. Davis.

Beamer, Lauth, Steinley & Bond, Stephen A. Bond and Phillip A. Bond, for Defendant and Respondent Zoological Society of San Diego.

## INTRODUCTION

In this probate matter, Mary Tyler and her son Mark Tyler[1] appeal the dismissal of their petition challenging the validity of trust amendments and the actions of the named trustee, Billy E. Davis. They also appeal the probate court's award of attorney fees to the Zoological Society of San Diego (Zoo), a trust beneficiary, and Davis, the named trustee. The Zoo and Davis contend the appeal from the dismissal of the Tylers' petition is untimely because the Tylers did not file their notice of appeal within 60 days of when they were served with a notice of entry of the dismissal order. We agree and dismiss the appeal as to the dismissal order. We affirm the order awarding attorney fees to the Zoo and Davis because we conclude the probate court had equitable power to enter the awards and properly exercised its discretion to award fees in this case because the Tylers commenced their action in bad faith.

## BACKGROUND

### A

Martha A. Bobbitt (Martha) and James R. Bobbitt (James) created the Bobbitt Trust in 1985. James died on January 21, 2003. After his death, according to the terms of the trust, the estate was divided into three subtrusts (Trust A, B, and C), which were held for the benefit of Martha during her lifetime. The original trust provided, upon the

---

[1]    Because they share a surname, we refer to Mary and Mark by their first names when we refer to them individually. We intend no disrespect. We refer to them together as the Tylers.

death of the surviving spouse, Trusts B, C, and any of Trust A not disposed of under the terms of the trust would be distributed in two equal shares, one share to James's heirs and one share to Martha's heirs.

B

Martha, as the surviving spouse, retained the right to revoke or amend the Bobbitt Trust. She executed an amendment to the Bobbitt Trust in January 2003. Apparently two versions of the first amendment exist. Both versions modified the terms of the original trust to name Martha as the sole trustee, eliminating a cotrustee designated in the original trust. One version of the amendment designated Davis as the sole successor trustee in the event of Martha's death or resignation, the other did not.

In December 2005, Martha executed a second amendment to the Bobbitt Trust revising the distribution of the trust following Martha's death. According to the terms of the second amendment, Martha's sister, Mary, was to receive $2 million and Mary's son, Mark, was to receive $500,000. Davis and his wife were to receive $100,000 and each of their four daughters were to receive $100,000. The second amendment provided for pecuniary gifts to five charitable organizations, including the Zoo, which was to receive $3 million and its share of the residue of the trust, which was to be divided equally among the five charitable organizations.

Martha died in November 2007 leaving no parents or issue. She was survived by Mary and Mark.

## C

Davis began to serve as the successor trustee of the Bobbitt Trust and retained an attorney (who is now deceased) to represent him as the trustee of the estate. Davis, through his attorney, filed a petition for an order to declare property to be included in the trust estate. The petition identified Davis as the trustee and referred to the two trust amendments. Davis lodged copies of the amendments with the court. Mary and Mark were listed as beneficiaries of the trust and on the proof of service with their correct address. The parties stipulated that a copy of the notice of hearing, together with a proof of service by mail on January 16, 2008, was found in the records maintained by Davis's attorney as well as in the court file related to the trust proceedings.

After Martha's death, Mary consulted a lawyer. Although the parties disputed the scope of the representation, Mary agreed she hired the lawyer to obtain items of personal property that had belonged to her deceased brother. The lawyer sent a letter to Davis's attorney on April 15, 2008, asking about items of personal property and also for "a full accounting of the trust estate" and an estimated distribution date. "[Mary] realizes that it has not been quite six months from the date of death, and we are mindful that Martha has a taxable estate, accordingly your best good faith distribution estimate will be appreciated as opposed to a hard and fast promised distribution date." The same letter enclosed "the original receipts signed by my client and her son, [Mark], for the notices given to them under Probate Code [s]ection 16061.7." The letter enclosed notices, apparently signed by both Mary and Mark in February 2008, identifying Davis as the trustee and stating the

4

trust documents, including amendments, were provided with the notice. The Tylers dispute the veracity of the signatures.

Over the next several years, Mary received payments from Davis as the trustee, consistent with the gifts under the second amendment. Mary received $2,050,000 and Mark received $500,000.

## D

The Zoo filed a petition in November 2012, seeking to hold Davis accountable for breach of fiduciary duties owed to the Zoo and other beneficiaries of the trust. It alleged some of the individuals entitled to pecuniary gifts under the trust, including Mary, had not received full distribution. Because the individual beneficiaries had not been paid in full, charitable beneficiaries such as the Zoo had not received a distribution from the trust. The Zoo complained Davis failed to carry out the terms of the trust in a timely fashion and engaged in self-dealing by paying himself excessive compensation. The court issued an interim order suspending Davis's powers as trustee and appointing a temporary trustee.

## E

In February 2014, the Tylers filed a "Petition for Fraud; Conversion; Cancellation of Trust Amendments; Removal of Trustee and Appointment of Successor Trustee; to Compel Accounting; Surcharge; Constructive Trust; Injunction." The petition denied the Tylers were served with the trust documents or amendments and claimed they first discovered the amendments "in late September, 2013." The Tylers alleged Davis

modified the trust without authority and falsified an amendment to add himself as a successor trustee. They stated Davis "had virtually no connection with the Bobbitt family." They further alleged Davis "wrongfully and fraudulently" caused to be created the second amendment to the trust "whereby the rightful heirs to the [Bobbitt] Trust were deprived of their inheritance and said inheritance was instead given to [Davis], [Davis's] family and others." Among other things, the Tylers sought to invalidate the second amendment and remove Davis as trustee. They also sought an accounting and surcharge.

The Zoo opposed the petition asserting it was barred by the statute of limitations and the doctrine of laches. The Zoo also asserted Mark had no standing to object to the validity of the trust amendments because he was not entitled to any distribution from the trust as an heir and his only entitlement was as a beneficiary under the second amendment, the validity of which he sought to challenge. Davis joined in the Zoo's trial brief on the issues of the statute of limitations and the doctrine of laches.

F

The court held a bifurcated trial on the issue of the statute of limitations. At the outset of the hearing, the court determined Mark had no standing because he only became a beneficiary of the trust through the second amendment, which he was seeking to set aside. If the second amendment was set aside, he would have no entitlement to the estate and, therefore, had no action to pursue. Because he suffered no injury by virtue of the existence of the trust amendments, he lacked standing to challenge them.

6

The court then heard the evidence and argument regarding the issue of the statute of limitations. The court found Mary was served with a notice of lodgment, including copies of the trust and its amendments, by mid-January 2008. The court found Mary's testimony that she did not receive the documents to be not credible because it was inconsistent both with her deposition testimony and with the letter sent from her attorney. Based on these factual findings, the court concluded Mary's petition was barred even by the most generous four-year statute of limitations (Code Civ. Proc., § 343). She had sufficient notice no later than April 2008 to require her to inquire about the existence of the trust and its amendments.

The signed order dismissing Mary's petition was entered on July 31, 2015. On August 4, 2015, the Zoo served notice of entry of the order stating the petition was dismissed with prejudice and attached a copy of the signed order. A judgment including an award of costs to the Zoo and Davis was later entered on September 25, 2015.

G

The court awarded attorney fees to the Zoo and Davis based upon the court's equitable powers arising from various sections of the Probate Code. The court found Mary was aware of the terms of the amendments and knew or should have known facts giving rise to her claims by April 2008, more than six years before she filed her petition. Therefore, her action was brought in bad faith. Similarly, the court found Mark, who received substantial distributions as a result of the very amendments that allowed him to inherit, asserted a position in litigation that was frivolous and in bad faith. The court

7

entered an amended judgment awarding attorney fees to the Zoo in the amount of $114,536.68 and to Davis in the amount of $25,570.

## DISCUSSION

## I

### *The Appeal of the Dismissal is Untimely*

Davis and the Zoo contend the Tylers' appeal on the merits must be dismissed as untimely. We agree.

A notice of appeal must be filed within "60 days after the party filing the notice of appeal … is served by a party with a document entitled 'Notice of Entry' of judgment *or* a filed-endorsed copy of the judgment, accompanied by proof of service." (Cal. Rules of Court, rule 8.104(a)(1)(B),[2] italics added.) A written dismissal signed by the court and filed in the action constitutes a judgment. (Code Civ. Proc., § 581d.) "Compliance with the time for filing a notice of appeal is mandatory and jurisdictional." (*Laraway v. Pasadena Unified Sch. Dist.* (2002) 98 Cal.App.4th 579, 582 (*Laraway*).) "If a notice of appeal is filed late, the reviewing court must dismiss the appeal." (Rule 8.104(b).)

The court dismissed the Tylers' petition by a written minute order of July 31, 2015, which was electronically signed by the court and entered in the action. This constituted an appealable order under Code of Civil Procedure section 581d. (*Brehm v. 21st Century Ins. Co.* (2008) 166 Cal.App.4th 1225, 1233-1234 [a minute order "signed by the court

---

2       Further rule references are to the California Rules of Court.

8

(or at least stamped with a replica of the trial judge's signature)" is an appealable order]; cf. *Powell v. County of Orange* (2011) 197 Cal.App.4th 1573, 1577-1579 [*unsigned* minute order dismissing the complaint is not effective as a judgment.)[3] Here, the July 31, 2015, order "contemplated no further action, such as the preparation of another order or judgment [citation], and disposed of all issues between all parties." (*Laraway*, *supra*, 98 Cal.App.4th at p. 583.)

On August 4, 2015, the Zoo served the Tylers with a document entitled "Notice of Entry of Order Dated July 31, 2015," stating the order was entered "dismissing with prejudice the Petition for Fraud; Conversion; Cancellation of Trust Amendments; Removal of Trustee and Appointment of Successor Trustee; to Compel Accounting; Surcharge; Constructive Trust; Injunction presented by [Mary] and [Mark]." The notice of entry document also attached the signed minute order. This notice satisfied rule 8.104(a)(2) and triggered the 60-day period for the Tylers to appeal. (*Alan v. American Honda Motor Co., Inc.* (2007) 40 Cal.4th 894, 899 (*Alan*).)

The Tylers contend the minute order did not comply with rule 8.140(a)(1) because it was not file stamped. A file stamp is required by the rule to trigger the time for appeal only if a court clerk or a party serves a copy of the judgment *in lieu of* a notice of entry. There is no requirement for the notice of entry to attach a file-stamped copy of the

---

[3] Although the court in *Brehm* encouraged trial courts to use signed dismissal orders rather than minute orders, it concluded a signed minute order constitutes an appealable order. (*Brehm*, *supra*, 166 Cal.App.4th at p. 1234, fn. 5.)

judgment or order. The parties do not dispute the July 31, 2015, order dismissing the action was entered in the action.

In *Alan*, *supra*, 40 Cal.4th at pages 902-903, the court concluded a minute order was an appealable order, but the clerk's mailing of that order without either a file stamp or a document bearing the title "Notice of Entry" did not comply with rule 8.104(a)(1). Here, the Zoo served a document properly titled "Notice of Entry," which advised the parties of the entry of the order dismissing the Tyler's entire petition.

The subsequent judgment entered on September 25, 2015, was a repetition of the July 31 dismissal order and merely added awards of costs for the Zoo and Davis. It did not restart the time for appeal. (*Laraway*, *supra*, 98 Cal.App.4th at p. 583.) There was no substantial modification of the judgment materially affecting the rights of the parties. (*Ellis v. Ellis* (2015) 235 Cal.App.4th 837, 842.) There is no ambiguity to allow us to resolve this issue in the Tylers' favor. If they were confused about the effect of the signed dismissal order and the subsequent judgment, the prudent course of action would have been to appeal both the July 31, 2015 dismissal order and the September 25, 2015 judgment. (*Id*. at pp. 845-846.)

The Tylers did not do so. They filed their notice of appeal on November 23, 2015, more than 100 days after service of the notice of entry of the dismissal order. On the first appeal, they contest the merits of the dismissal order, not the award of costs. Therefore, the appeal as to the dismissal order is untimely and must be dismissed. (*Laraway*, *supra*, 98 Cal.App.4th at p. 583.)

10

*Attorney Fees*

The Tylers separately appeal award of attorney fees to the Zoo and Davis contending there was no statutory or equitable basis for the award. We disagree.

"We independently review any legal issue regarding the appropriate criteria for a fee award. But once those criteria are identified, we defer to the trial court's discretion in determining how they are to be exercised. [Citation.] In fashioning an equitable remedy, the trial court is in the best position to determine whether the criteria for a fee award have been met. We will not disturb its judgment on this issue unless we are convinced the court abused its discretion. [Citation.] A trial court abuses its discretion only where its action is clearly wrong and without reasonable basis." (*Pipefitters Local No. 636 Defined Benefit Plan v. Oakley, Inc.* (2010) 180 Cal.App.4th 1542, 1547-1548.)

The probate court "enjoys broad equitable powers over the trusts within its jurisdiction. [Citation.] This discretion derives not simply from judicial gloss, but from the Probate Code itself." (*Hollaway v. Edwards* (1998) 68 Cal.App.4th 94, 99.) The *Hollaway* court differentiated the limitation of awarding costs under Code of Civil Procedure section 1032, subdivision (b), to a prevailing party in ordinary civil litigation from the discretion provided to a probate court by Probate Code section 1002 "to decide not only *whether* costs should be paid, but also, if they are awarded, who will pay and who recover them." (*Hollaway*, *supra*, at p. 99; see Prob. Code, §§ 17211 [the court may award costs, including attorney fees, incurred to defend an action contesting a trustee's

account when the action is brought "without reasonable cause and in bad faith"], 15642, subd. (d) [the court may order a person seeking removal of the trustee to bear the costs, including attorney fees, if the removal action was brought in bad faith and contrary to the settlor's intent], 17206 [probate court has discretion to make "any orders and take any other action necessary or proper to dispose of the matters presented" by a Prob. Code, § 17200 petition].)

The probate court has broad discretion to award attorney fees incurred in a challenge to a trust. (*Hollaway*, *supra*, 68 Cal.App.4th at pp. 99-100 [court had discretion to award attorney fees to trustee for successfully defending against removal petition and clarifying her role].) "[W]hen a trust beneficiary instigates an unfounded proceeding against the trust in bad faith, a probate court has the equitable power to charge the reasonable and necessary fees incurred by the trustee in opposing the proceeding against that beneficiary's share of the trust estate." (*Rudnick v. Rudnick* (2009) 179 Cal.App.4th 1328, 1335.) Similarly, "beneficiaries who have incurred attorney fees, either to vindicate their position as beneficiaries [citation] or for the benefit of the trust [citation], are entitled to have those fees paid." (*Id*. at p. 1334, fn. 2.) If the assets of the trust have been distributed to the beneficiaries to be charged, the court may order a portion of the trust assets returned for payment of the fees awarded to the trustee or other beneficiaries. (See *Kasperbauer v. Fairfield* (2009) 171 Cal.App.4th 229, 238.)

The *Rudnick* court considered and rejected an argument similar to the one asserted by the Tylers here, i.e., that the Supreme Court cases of *Bauguess v. Paine* (1978) 22

12

Cal.3d 626 and *Estate of Beach* (1975) 15 Cal.3d 623 preclude an award of attorney fees not authorized by statute. The *Rudnick* court explained, " the issue in *Bauguess v. Paine* was whether a trial court, not sitting in probate, could award attorney fees as a sanction under its *supervisory* power. Here, the award was made pursuant to the probate court's broad equitable powers. Moreover, the *Bauguess* court affirmed that a court's equitable powers are distinguishable from its supervisory powers when the court noted that 'Courts have used their inherent equitable power in limited situations to award attorney's fees when it was warranted by the equities of the case.' " (*Rudnick*, *supra*, 179 Cal.App.4th at p. 1335, quoting *Bauguess v. Paine*, *supra,* at p. 636.)

The *Rudnick* court also distinguished *Estate of Beach*, *supra*, 15 Cal.3d 623 stating, "[i]n *Estate of Beach*, an executor successfully defended a contest filed by three out of the four beneficiaries of a testamentary trust. The California Supreme Court reversed the trial court's order charging the executor's attorney fees against the contestants' share of the trust on the ground that the trial court had exceeded its authority. [Citation.] However, in *Estate of Beach* there was no finding that the contest had been filed in bad faith. Rather, the court concluded, 'A contrary rule would unduly deter contestants such as these from questioning the stewardship of executors and administrators through *proceedings brought in good faith*.' " (*Rudnick*, *supra*, 179 Cal.App.4th at p. 1335, quoting *Estate of Beach* at p. 646, italics added by *Rudnick*.) We agree with the *Rudnick* court's analysis and conclude the probate court had the authority

13

to award attorney fees in this case based on a finding the Tylers litigated this action in bad faith.

As to Mary, the court concluded she knew or should have known of the facts giving rise to her action more than six years before she filed her petition and, thus, the commencement of this action was frivolous. The court found Mark's pursuit of this action to set aside the very documents that entitled him to inherit substantial amounts, to be frivolous and in bad faith. We conclude substantial evidence supports these findings and the trial court did not abuse its discretion in awarding fees to the Zoo and Davis.

DISPOSITION

The appeal from the dismissal order is dismissed as untimely. The order awarding attorney fees is affirmed. The respondents shall recover their costs on appeal.

MCCONNELL, P. J.

WE CONCUR:

BENKE, J.

PRAGER, J.*

---

* Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14