Filed 7/3/14  Estate of Buser Trust CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| Estate of FLOYD AND DONNA BUSER TRUST dated September 16, 1997, Deceased. | D063381 |
| MARTIN BUSER, Trustee, | |
| Plaintiff and Respondent, | (Super. Ct. No. 37-2010-000150555-PR-TR-NC) |
| v. | |
| DOUGLAS BUSER, | |
| Defendant and Appellant. | |

APPEAL from a judgment and orders of the Superior Court of San Diego County, Julia C. Kelety, Judge.  Affirmed; denial of motion to dismiss is confirmed upon reconsideration; motion for sanctions on appeal denied.

Snyder & Hancock, Scott A. Hancock; Law Offices of Mary A. Lehman and Mary A. Lehman for Defendant and Appellant.

Hickson, Kipnis & Barnes, Howard A. Kipnis, Steven J. Barnes; McKenna Long & Aldridge and Charles A. Bird for Plaintiff and Respondent.

This probate matter began as a petition by appellant Douglas Buser (Douglas), a beneficiary of a family trust set up by his parents, to obtain removal of the trustee and other relief. (Prob. Code, § 17200 et seq.) The trustee is respondent Martin Buser (Martin), his brother and another beneficiary. (Burton Buser, their brother, is also a party and beneficiary and does not appear on appeal; we use first names for convenience, meaning no disrespect.)

Douglas challenges several orders issued by the probate court that disposed of various petitions concerning and enforcing a written, court-approved settlement agreement, containing an arbitration clause that was entered into by the three brothers to resolve their disputes over administration of the trust. (Prob. Code, § 1300; Code Civ. Proc.,[1] § 904.1, subd. (a)(10).) Another challenged order imposed $8,689.50 monetary sanctions against Douglas, under the terms of section 128.7, for his pursuit of an unmeritorious renewed motion or reconsideration petition (to be described later). (§ 904.1, subd. (a)(12).) In an amended notice of appeal, Douglas also challenges the money judgment implementing the orders, in favor of Martin as trustee, in the principal amount of $90,848.84, plus interest, plus attorney fees and costs of $20,144. (§ 1294, subd. (d).)

As the merits panel, we are also presented with Martin's motion for sanctions for a frivolous appeal. Previously, this court denied Martin's motion to dismiss the appeal, but

---

[1] All further statutory references are to the Code of Civil Procedure unless noted.

without prejudice to our reconsideration. We have examined the dismissal issues and confirm the order of denial of dismissal, as will be explained.

On the merits of his appeal, Douglas primarily contends the probate court erred in issuing these orders and judgment, because the court confirmed an arbitration award that impermissibly included an award of fees and costs for a time period before the settlement agreement was formally approved by the probate court (six months after the execution of that agreement). Douglas interprets the settlement agreement as permitting only arbitration fees to be awarded, if incurred after its effective date of court approval. He characterizes the $49,772.66 in fees and costs that were incurred in mediation, prior to the effective date of the settlement agreement, as mediation fees that amounted to a new claim under the settlement agreement, because that settlement was intended to resolve all existing claims as of its date of signature. He thus contends the arbitrator exceeded his power under the arbitration clause, and requests the judgment on the arbitration award be modified to exclude that $49,772.66 amount. (§ 1286.2, subd. (a)(4).)[2]

Douglas also objects to the arbitrator's award that charged all the fees and costs against his own share of the trust estate, as court costs he owed to the estate for this unmeritorious litigation. He claims this allocation was unjustified, and further, that the

---

[2] Section 1286.2, subdivision (a)(4), provides that the court shall vacate an arbitration award (subject to some exceptions) if it determines: "The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted."

3

trial court erred as a matter of law in sanctioning him under section 128.7. (Douglas also made other arguments that he has conceded in his reply brief, as will be discussed.)

As will be explained, we conclude the money judgment is properly reviewable, as is the collateral sanctions order. On the merits, the arbitrator had a sufficient basis to interpret the settlement agreement in the manner that he did. (§§ 1286.2, subd. (a)(4); 1294, subd. (d).) The probate court did not err in confirming the arbitration award, and its rulings on the competing petitions were justified to resolve the disputes properly brought before it. Moreover, the court did not abuse its discretion in awarding sanctions to Martin under section 128.7, based upon Douglas's repeated attacks on the settlement agreement.

However, we deny Martin's appellate motion for an award of additional sanctions against Douglas, as we are unable to conclude this appeal was wholly frivolous.

I

*BACKGROUND FACTS*

A. Trust Assets*;* Prior Appeal

A separate appeal filed by Douglas arising from the trust disputes was recently resolved by this court, concerning issues not directly involved in this appeal. (*Buser v. Buser* (Feb. 19, 2014, D064000) [nonpub. opn.]; our prior opinion.) We utilize some of the introductory material from that opinion, to provide background for describing the remaining issues.

In 1997, Floyd and Donna Buser (the parents) established a trust for the distribution of their assets upon their death to their three sons (Douglas, Martin, and Burton). The trust provides for the distribution of the trust assets in equal shares to the three sons. The parents owned five real estate properties, known as the Padilla, Park, Bogue, Rosecrans, and San Marino properties. Before Floyd's death, Douglas moved into the Rosecrans residential property, and spent money maintaining it.

In the trust, Martin was named as successor trustee upon the parents' death or incapacity and was granted power of attorney. After Donna died, Martin gradually assumed responsibility for the management of Floyd's financial affairs. Due to Floyd's dementia, the court appointed counsel for Floyd, and Martin acted as successor trustee.

As trustee, Martin made a proposal for preliminary distribution of the assets, and Douglas objected. The probate court approved the plan, which gave rise to Douglas's prior appeal. In our prior opinion, we affirmed the probate court's order, over Douglas's challenges. We noted that the issue of the final distribution was to be decided at a future date and that the real property valuations were left undecided in the preliminary distribution order. The probate court had reasonably declined to calculate at that time what equalizing payments should be made. In our prior opinion, we took note of this related appeal, to the extent of stating there should be sufficient assets left in the trust to make any necessary future adjustments in Douglas's favor, depending on the outcome of this current pending appeal (with respect to over $110,000 of court costs that the probate court charged against or allocated to Douglas's share of the trust estate).

5

B.  Douglas's Petition Seeking Removal of Trustee, etc.; Mediation

Starting in 2010, Martin and Douglas became involved in litigation relating to the administration of the trust.  Martin, acting as trustee, filed an unlawful detainer action in October 2010, to reclaim possession of the Rosecrans residence from Douglas and his wife, Carol.

Douglas responded by filing a petition seeking Martin's removal as trustee and remedies for breaches of trust.  Douglas alleged Martin refused to reasonably provide financial information regarding the trust, and breached his duty of impartiality by seeking to evict Douglas and his wife from trust property.

In May 2011, Douglas, Martin and Burton, along with court-appointed counsel for Floyd, voluntarily mediated their claims before retired superior court judge David B. Moon, Jr.  Martin had an attorney present, and Douglas and Burton represented themselves in propria persona.  On May 17, 2011, the parties signed a settlement agreement.  As relevant here, paragraphs 14 and 15 provided Douglas could continue to occupy the Rosecrans residence through May 31, 2012, and he would also receive a total of $21,500 from the Trust (i.e., $3,000 for unreimbursed expenses incurred at the Rosecrans property, and the remainder within 30 to 60 days, following court approval of the settlement agreement).

In return, Douglas agreed to approve Martin's accounting through December 31, 2010 and to dismiss his pending petition with prejudice.  Each party agreed to fully release all claims against each other, including a waiver of their rights under Civil Code

6

section 1542. Notably, the parties released one another from all present and future claims, known or unknown, "arising out of any matter, or thing *existing as of the date of the execution of this Settlement Agreement* . . . connected with or incidental to" Martin's trust administration, including claims and allegations in the legal matters pending in court. (Italics added.)

Ordinarily, the trust assets were to pay all reasonable fees incurred in connection with the trust proceedings. Martin would receive compensation for trustee services upon final distribution. Paragraph 39 of the settlement agreement, entitled "Effective Date," stated the agreement "shall be in full force and effect as of the date the court approves the Settlement Agreement."[3]

### C. Arbitration Clause in Settlement Agreement; Court Approval

Under Paragraph 10 of the settlement agreement, the parties agreed to submit any dispute regarding the interpretation or enforcement of the settlement agreement, as well as disputes about trust administration, to mediation and then to arbitration, as follows:

> "Any and all disputes between or among MARTIN, DOUGLAS or BURTON regarding the interpretation or enforcement of this Settlement Agreement, *the trust administration* and/or regarding the care of Floyd shall be referred to Judge Moon for mandatory mediation, and if not resolved at mediation, to be then referred to Judge Moon for binding arbitration in accordance with [American Arbitration Association (AAA)] Arbitration Rules. *Each party understands and agrees that he is waiving all right to resolve such*

---

[3]    Blanks were left for Douglas's and Burton's wives to sign, but Douglas's wife, Carol Buser, refused to sign the settlement agreement. Eventually, further mediation was held, and on August 11, 2011, Martin waived the requirement of her signature.

*issues and disputes through the filing of a court proceeding,
including a waiver of all procedural rights and rights of appeal.*
Moreover, all costs and reasonable attorney's fees incurred by the
prevailing party in such arbitration shall be awarded to the prevailing
party and assessed against the party who fails to prevail in an award
to be rendered by Judge Moon as arbitrator." (Italics added.)[4]

On May 23, 2011, court-appointed counsel for Floyd filed a petition to approve
the settlement agreement. On July 6, 2011, Douglas filed objections to this petition.
After several contentious hearings, the court approved the settlement agreement on
October 6, 2011. At that time, the court did not order any payment of fees and costs for
the mediation leading up to the settlement agreement or its approval.

The mediation firm then sent a notice of a mediation scheduled for October 28,
2011. Although the notice was dated October 24, 2011 and postmarked October 26,
2011, Douglas said he did not receive it until the day of the mediation, and could not
attend. The mediation related to the $49,772 that Martin was claiming for mediation and
legal fees incurred for the period May 17, 2011 to October 6, 2011. Douglas was
opposing any such award, as having been incurred after the settlement agreement was
signed, but before it became effective by court order.

On December 15, 2011, Douglas demanded that Martin pay to him the $21,500
sum agreed upon (which included $3,000 for the Rosecrans house expenses). When
Martin did not respond or do so, Douglas sent a letter on December 30, 2011, seeking to

---

4    This attorney fees clause, regarding arbitration in enforcement of the settlement
agreement, superseded the alternate clause that the trust was to pay all reasonable fees
incurred in connection with trust proceedings.

rescind the settlement agreement for failure of performance pursuant to Civil Code section 1689, subdivision (2).

### D. Further Litigation; Previous Separate Appeal Dismissed

On February 6, 2012, Martin brought an ex parte request for the appointment of an arbitrator, under the settlement agreement's paragraph 10, the arbitration clause. After holding hearings, the court ordered on February 23, 2012 that Judge Moon was appointed as arbitrator. At an ex parte hearing on March 29, 2012, Douglas objected on numerous grounds to the appointment of an arbitrator (e.g., an ex parte application was not appropriate because Douglas was claiming he had rescinded the settlement agreement and Judge Moon was not impartial). The court denied Douglas's objections, stating the issue of rescission was "technically not before me."

On March 30, 2012, Judge Moon recused himself as arbitrator. On April 3, 2012, the superior court issued an amended order appointing Attorney B. James Brierton as successor arbitrator. Douglas sought to disqualify the appointed arbitrator, who denied his disqualification notice. When Floyd died on May 3, 2012, his survivor's trust became irrevocable.

On April 19, 2012, Douglas filed a notice of appeal from the February 23, 2012 order appointing the arbitrator. This appeal was dismissed by this court as a nonappealable order on June 1, 2012. Although Douglas sought rehearing of that dismissal, his request was denied.

9

## E. Arbitration Award; Subject Motions

Around the time of the scheduled June 14, 2012 arbitration hearing, numerous filings were being made by Douglas and Martin. On May 1, 2012, Douglas filed a "Petition for Relief Based on Rescission (Civ. Code, § 1689), from Breach of Trust (Probate Code §16420), and Complaint for Damages for Breach of Contract" ("Douglas's May 1, 2012 rescission petition"). Douglas asserted the settlement agreement should be rescinded based on the lack of "consideration" and failure of performance by Martin.

On June 8, 2012, Douglas filed a "Renewed Motion for Relief to Vacate or Set Aside Appointment of Arbitrator" ("Douglas's June 8, 2012 renewed motion to vacate," citing §§ 1008, 1281.2 & 1281.6). This motion pertained to the April 3, 2012 amended order that appointed Attorney Brierton as arbitrator.

At the June 14 hearing, Douglas appeared telephonically. The arbitrator took testimony from both sides and admitted exhibits.

After the hearing and while the decision was pending, on June 18, 2012, Martin filed a motion for an order compelling arbitration of the issues raised by Douglas's May 1, 2012 rescission petition.

After the June 14 hearing concluded, the arbitrator rendered his award on June 29, 2012. The award cited to *Estate of Ivey* (1994) 22 Cal.App.4th 873, 882-883, and other cases, as authority for the probate court's equitable supervision of trust administration, to provide remedies for unfounded and bad faith conduct. The arbitrator concluded that

10

Douglas's "reprehensible" actions were taken to thwart the settlement agreement, and Douglas's intent was evidently to negotiate a new and better deal for himself.

In the award, the arbitrator ruled in favor of Martin and against Douglas and made findings as follows: (a) Douglas had violated the terms of the settlement agreement, as well as a confidentiality clause in the mediation agreement, and therefore Martin was entitled to recover against Douglas all attorney fees and costs incurred by the trust in defense of the settlement agreement (from its date of signature), totaling $90,848.84 through the date of the arbitration hearing; (b) Martin was not obligated to pay Douglas the $21,500 due to him under the settlement agreement, but instead was entitled to satisfy that obligation by offsetting it with the now established amount that Douglas owed the trust, because of his breaches of the settlement agreement; (c) Martin's failure to pay Douglas $21,500 due to him under the settlement agreement did not operate to give Douglas the right to rescind the settlement agreement.

In the modified and corrected award, the arbitrator ruled that to the extent the net amount due the trust from Douglas remained unsatisfied, "Martin shall offset against Douglas's entitlements and interests as a remainder Trust Beneficiary, all amounts due and owing . . . before any entitlements and interests in the Trust are distributed to Douglas."

### F. Hearing on the Motions; Four Challenged Orders

On August 10, 2012, Martin moved to confirm the award. Meanwhile, the North County probate division was being closed and all matters were being reassigned to the

11

central probate division. Hearing dates were continued on the various motions. Eventually, the probate court heard arguments on October 2, 2012, on Martin's three motions and on Douglas's June 8, 2012 renewed motion to vacate. The court first discussed with the parties whether a new motion filed by Douglas on September 5, 2012, to vacate the arbitration award, should be accelerated or continued until the scheduled hearing date, which was November 6, 2012. Ultimately, the court treated Douglas's newly filed motion as opposition to Martin's motion to confirm the award. (§ 1285 et seq.)

At the hearing, Martin argued that he had attempted to schedule an October 2011 mediation on the fees issues, but Douglas did not attend, and therefore Martin was authorized to treat the postsignature, preapproval fees as a matter of allocation in trust administration. He could then obtain an offset against Douglas's share of the ultimate distribution.

In response, Douglas argued that only inadequate notice had been given of the October 2011 mediation that he was unable to attend, and the mediation fees amounted to a new claim under the settlement agreement, of which he was entitled to separate notice under AAA rules. He also contended the arbitrator had failed to follow such rules and had not made the proper disclosures, although Douglas did not know of any potential conflicts of interest. He said he went to arbitration only "under a duress situation."

Although the tentative ruling was in favor of Douglas's argument that the arbitrator's award of attorney fees and costs in the amount of $49,772.66 (for the period

12

of time between May 17, 2011 and October 6, 2011) was unjustified, the final ruling was in favor of Martin as trustee and included that amount. The probate court rejected Douglas's position that such an award of fees and costs incurred after the settlement agreement was signed, but before the court approved it, was in excess of the arbitrator's authority, because the settlement agreement was enforceable and it provided for arbitration of trust administration issues. The court denied Douglas's June 8, 2012 renewed motion to vacate.

The probate court thus confirmed the arbitration award, for $90,848.84 as the principal amount, plus interest. It also awarded Martin arbitration fees ($11,084) and other fees and costs incurred in bringing the motion to confirm (for a total of $20,144).

With respect to Martin's motion for sanctions under section 128.7, the court made findings that Douglas had made four unwarranted attacks on the appointment of the arbitrator, including his ex parte opposition, his unsuccessful appeal and reconsideration request, and his June 8, 2012 renewed motion to vacate, which had just been denied. The court sanctioned Douglas under section 128.7, awarding Martin as trustee $8,689.50 in sanctions, subject to his proper documentation.

Finally, on the remaining June 18, 2012 motion by Martin to compel additional arbitration of the issues raised by Douglas's May 1, 2012 rescission petition, the reporter's transcript shows that the probate court granted the motion to compel arbitration under the settlement agreement, and then put the matter over for review of any results at the next case management conference on February 11, 2013.

13

*PROCEDURAL CONCERNS ON APPEALABILITY*

Douglas appealed January 3, 2013.  On February 1, 2013, a money judgment was entered, providing that Douglas was not entitled to rescind the settlement agreement, and further, to the extent Douglas did not pay the judgment amount, Martin as trustee was allowed to offset the amounts awarded against Douglas's ultimate distribution from the trust.  The judgment also awarded attorney fees and costs.   Martin then filed a motion to dismiss portions of this appeal on February 13, 2013 and Douglas opposed it.  On March 13, 2013 Douglas filed an amended notice of appeal from the judgment.

On March 18, 2013, this court denied Martin's motion to dismiss, without prejudice to reconsideration by this panel when hearing the merits of the appeal.  Later, Martin's "Petition for Rehearing of Motion to Dismiss Portions of Appeal" (opposed by Douglas) was denied on April 19, 2013.

Martin separately argues for enforcement of a term in the settlement agreement that pertains to waiver of a right to appeal.  In relevant part, paragraph 10 of the settlement agreement reads:  "Each party understands and agrees that he is waiving all right to resolve such issues and disputes through the filing of a court proceeding, including a waiver of all procedural rights and rights of appeal."

However, the filing of a money judgment clarified that each of the subject orders that it formalized is properly appealable within the standards of section 904.1 for appealability.  (§ 904.1, subds. (a)(1), (2) [an appeal may be taken from a judgment (with

certain exceptions), or from an order made after an appealable judgment].)  Under section 1294, subdivision (d), Douglas retained his right to appeal the money judgment, which subsumes the order confirming the arbitration award, and the order denying Douglas's June 8, 2012 renewed motion to vacate.  There is no dispute that the order granting the motion by Martin for sanctions against Douglas under section 128.7 is appealable under section 904.1, subdivision (a)(12).

Under all these circumstances, it is appropriate to resolve the merits of the claims about the money judgment, including its finding that "the failure of [trustee] Martin to pay Douglas $21,500 upon court approval of the [settlement agreement] on October 6, 2011 did not operate to give Douglas the right to unilaterally rescind the [settlement agreement]."  We note that the parties are still arguing conflicting positions on the appealability of the probate court's order granting Martin's petition to compel arbitration of Douglas's May 1, 2012 rescission petition (as later amended Aug. 31, 2012, which was after the June arbitration was completed).  The record is unclear on whether any such separate and additional arbitration proceeding is taking place, and in any case, no such postrecord issues would properly be before us.  Moreover, for purposes of this appeal, Douglas's reply brief has abandoned at least some of his rescission theories.

For purposes of reviewing all these related orders and the money judgment, it is unnecessary for us to reconsider the order that denied Martin's motion for dismissal of a portion of the appeal, and that order is confirmed.  We resolve only the propriety of the

15

subject orders upon the existing record, and then address the various sanctions issues (pts. IV-V, *post*).

III

*MERITS OF MONEY JUDGMENT ON ARBITRATION RELATED ORDERS*

To review the trial court's judgment confirming the arbitration award, we apply the standards of section 1286, requiring " '[t]he court shall confirm the award as made . . . unless in accordance with this chapter it corrects the award and confirms it as corrected, vacates the award or dismisses the proceeding.' " (*Ikerd v. Warren T. Merrill & Sons* (1992) 9 Cal.App.4th 1833.)  "Our review of an arbitration award requires us to extend to it every intendment of validity and the party claiming error has the burden of supporting his contention."  (*Ibid*., citing *Cobler v. Stanley, Barber, Southard, Brown & Associates* (1990) 217 Cal.App.3d 518, 526 (*Cobler*).)

It is well accepted " ' "[t]he powers of an arbitrator are limited and circumscribed by the agreement or stipulation of submission." ' "  (*Cobler*, *supra*, 217 Cal.App.3d 518, 530.)  However, a reviewing court will refrain from substituting its own judgment for the arbitrator's determinations about the contractual scope of the powers granted by the arbitration agreement.  (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 372 (*Advanced Micro Devices, Inc.*).)  "The remedy an arbitrator fashions does not exceed his or her powers if it bears a rational relationship to the underlying contract as interpreted . . . by the arbitrator and to the breach of contract found . . . by the arbitrator." (*Id.* at p. 367; see *Molecular Analytical Systems v. Ciphergen Biosystems, Inc*. (2010) 186

16

Cal.App.4th 696, 705 [doubts as to the scope of an agreement to arbitrate are to be resolved in favor of arbitration].)

"In determining whether an arbitrator exceeded his powers, we review the trial court's decision de novo, but we must give substantial deference to the arbitrator's own assessment of his contractual authority." (*Kelly Sutherlin McLeod Architecture, Inc. v. Schneickert* (2011) 194 Cal.App.4th 519, 528; *Advanced Micro Devices, Inc., supra,* 9 Cal.4th at p. 376, fn. 9.) We examine the terms of the settlement agreement and its interpretation by the arbitrator, and the trial court's application of these legal standards.

A. Terms of Settlement Agreement

As mentioned above, both the trial court and the arbitrator rejected Douglas's rescission claims, based on nonperformance by Martin, and Douglas is not pursuing them here. Instead, we focus on Douglas's arguments that the arbitrator misapplied the terms of the settlement agreement or exceeded his authority, when he awarded certain attorney fees and costs that were chargeable to Douglas's interest in the trust assets. Douglas claims that the bills for the proceedings that took place between the signature date and the effective date of the agreement amounted to a new claim that had not been made before. Thus, Martin should have been deemed to have released any such future claims in the other portions of the settlement agreement. Douglas argued his own releases could only apply to claims "arising out of any matter, or thing *existing as of the date of the execution of this Settlement Agreement . . . .*" (Italics added.) Thus, any confidentiality breaches after mediation should not be actionable.

17

A settlement is valid, binding, and enforceable under section 664.6 if the parties agreed to all material settlement terms. (*Hines v. Luke* (2008) 167 Cal.App.4th 1174, 1182.) This settlement agreement contains very broad language regarding the scope of its coverage: "Any and all disputes between or among [the brothers] regarding the interpretation or enforcement of this Settlement Agreement, *the trust administration* . . . shall be referred to Judge Moon for mandatory mediation, and if not resolved at mediation, to be then referred . . . for binding arbitration in accordance with AAA Arbitration Rules." (Italics added.)

Under this settlement agreement, all costs and reasonable attorney fees incurred by the prevailing party in arbitration about the meaning of the agreement shall be awarded to the prevailing party, to be assessed against the unsuccessful party. (See § 1284.2 [allows the parties to shift individual fee responsibility by agreement].) Martin thus sought an order pursuant to sections 1284.2 and 1293.2, awarding reasonable attorney fees and costs incurred by the trustee in connection with the petition, as well as all arbitrator's fees charged to the trust.

### B. Interpretive Powers of Arbitrator; Probate Context; Analysis

This settlement was reached in the context of trust proceedings in probate. The parties agreed that trust administration matters would fall within the scope of the settlement. It is well settled that the probate court has the ability to exercise its equitable powers and authority to supervise the administration of a trust. (*Estate of Ivey, supra*, 22 Cal.App.4th 873, 883-884; *Rudnick v. Rudnick* (2009) 179 Cal.App.4th 1328, 1333-

18

1334 (*Rudnick*).) That equitable power is to be distinguished from the basic supervisory power of a court to impose sanctions upon motion. (*Ibid*.)

Where a trustee or executor incurs legal expenditures in defense of a beneficiary's challenges to his or her conduct in the administration of the estate, and where that challenged conduct is found to have been proper, the expenditures for the "successful defense against exceptions to his account are chargeable against the estate." (*Estate of Beach* (1975) 15 Cal.3d 623, 644.) Similarly, where the beneficiary's challenges to the trustee's or executor's administrative conduct were made in good faith, even though unsuccessful, the beneficiary's shares of the trust or estate is not chargeable for the defense expenditures. Where the beneficiary has questioned "the stewardship of executors and administrators through proceedings brought in good faith," the court has no authority to order that the entire burden of such extraordinary defense compensation for the executor/trustee and its attorney must be paid from the beneficiary's share of the estate or trust. (*Id.* at pp. 645-646.)

However, a probate court order that charges attorney fees to a beneficiary's future trust distributions, rather than to the trust as a whole, is justified if the court concludes that "it would be unfair to burden the majority beneficiaries with the payment of the fees that were incurred in responding to . . . bad faith [litigation or opposition to trustee's administration or proposals]." (*Rudnick*, *supra*, 179 Cal.App.4th 1328, 1334.) "[S]uch an order is authorized by the probate court's equitable powers and authority over the administration of the trust." (*Ibid.*)

19

"Although section 1286.2 permits the court to vacate an award that exceeds the arbitrator's powers, the deference due an arbitrator's decision on the merits of the controversy requires a court to refrain from substituting its judgment for the arbitrator's in determining the contractual scope of those powers." (*Advanced Micro Devices, Inc., supra,* 9 Cal.4th at p. 372.) In this case, the arbitrator's appointment by the probate court gave him the task of interpreting and implementing the settlement agreement. The parties do not expressly discuss whether the appointed arbitrator was authorized under this settlement agreement to exercise such administrative supervision in this trust context, inasmuch as such supervision is normally carried out by the probate court itself. (*Estate of Ivey, supra*, 22 Cal.App.4th 873, 884-885.) In his respondent's brief, Martin complains that Douglas did not acknowledge in his opening brief that the arbitrator was awarding the mediation phase fees and costs under the probate court's equitable power to charge a beneficiary with the trustee's expenses in responding to bad faith litigation. Martin then seems to state that such an equitable power for the arbitrator did not arise under the settlement agreement, although he does not explain how else it could have arisen.

Douglas's arguments did not address the source of the arbitrator's powers in this respect. We find the parties have forfeited any objections on this legal point, and in any case, the scope of this settlement agreement was broad enough to include such arbitral authority, over trust administration issues concerning the settlement and its enforcement.

Under the agreement, the parties released each other from all claims, known or unknown, "arising out of any matter, or thing existing as of the date of the execution of

20

this Settlement Agreement . . . connected with or incidental to," e.g., Martin's trust administration, which included the claims and allegations in the legal matters pending in court. The arbitrator was therefore justified in interpreting the scope of the submission as including trust administration matters, and in relying on the authority of *Estate of Ivey, supra*, 22 Cal.App.4th 873, 882-885, for such trust allocation issues that arose during the relevant time periods. Douglas cannot show this was a new claim that arose after the settlement document was signed. The arbitrator determined that Douglas's objections to the actions of Martin, as trustee, had been frivolous and "reprehensible." Further, Douglas's violation of the terms of the confidentiality clause in the mediation agreement, by litigating the mediation phase, also justified Martin's recovery of fees and costs he incurred, as trustee, in defending the settlement agreement. The award was justified in charging the expenses against Douglas's distributive share. (*Ibid.*; *Rudnick, supra*, 179 Cal.App.4th 1328, 1333-1334.)

Nevertheless, we think Martin goes too far in arguing that Douglas was solely responsible for all the disputes. Very short notice (four days) was given for the failed October 2011 mediation of fees, and it did not expressly identify the issue as a trust administration one. Since Douglas was representing himself in propria persona in the probate court, it is possible that he did not fully understand the very broad scope of the trust administration issues he was settling and conceding were arbitrable, although it is too late for challenges now. Martin has made no explanation why at least a $3,000 payment could not have been made for the residence maintenance expenses, as originally

21

agreed. However, on the record before us, we conclude the arbitration award and the resulting money judgment for trust administration and related expenses have a sufficient basis in the record and in the applicable legal principles.

IV

*TRIAL COURT'S AWARD OF SECTION 128.7 SANCTIONS*

A. Standards and Contentions

Martin's motion under section 128.7, subdivision (c) sought fees and costs incurred in opposing the Douglas's June 8, 2012 renewed motion to vacate, and in bringing Martin's sanctions motion. Martin had served an appropriate "safe harbor" request for retraction of Douglas's motion, without success. (§ 128.7, subd. (c).) The probate court imposed $8,689.50 in sanctions on Douglas for filing and pursuing, beyond a reasonable extent, his June 8, 2012 renewed motion to vacate. The court gave its reasons for the award at the hearing, finding that there was no evidence of true duress in this matter in support of Douglas's June 8, 2012 motion to vacate, and the motion was untimely, unsupported and had not moved the matter forward at all.

Douglas contends the probate court abused its discretion in making this award, and its reasons were legally impermissible. First, he argues that he was entitled to resist the appointment of the arbitrator, which had been made on an ex parte basis in March 2012. Once the appointing court stated that the rescission issue was not before it for resolution, only the appointment issue, Douglas filed his May 1, 2012 rescission petition, then renewed it. He argues his June 8, 2012 renewed motion to vacate included some of the

22

rescission claims, and some of them were still pending as of the time of the sanctions motion (the subject of the order for another arbitration). Douglas argues the probate court should not have cited to his unsuccessful appeal of the appointment order in this court, as grounds for sanctions, since he had a right to appeal to a higher court. Finally, he claims that the probate court was wrong in stating that since Douglas had attended the arbitration hearing (albeit under protest), his objections to the appointment were moot.

Under section 128.7 and the federal rule on which it was modeled, "there are basically three types of submitted papers that warrant sanctions: factually frivolous (not well grounded in fact); legally frivolous (not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law); and papers interposed for an improper purpose." (*Guillemin v. Stein* (2002) 104 Cal.App.4th 156, 167; Fed. Rules Civ.Proc., rule 11, 28 U.S.C.)

" 'While section 128.7 does allow for reimbursement of expenses, including attorney fees, its primary purpose is to deter filing abuses, not to compensate those affected by them. It requires the court to limit sanctions "to what is sufficient to deter repetition of [the sanctionable] conduct or comparable conduct by others similarly situated." ' " (*Optimal Markets, Inc. v. Salant* (2013) 221 Cal.App.4th 912, 920-921 (*Optimal Markets*).)

"A trial court is to apply an objective standard in making its inquiry concerning the attorney's or party's allegedly sanctionable behavior in connection with a motion for sanctions brought under section 128.7. [Citations.] Thus, for example, whether an action

23

is frivolous under section 128.7 is measured by an objective standard. [Citation.] [¶] Ordinarily, a ruling on a motion for sanctions brought under section 128.7 is reviewed under a deferential abuse-of-discretion standard. [Citations.] But where a question of statutory construction is presented in the course of the review of a discretionary decision, such issues are legal matters subject to de novo review. [Citations.] Thus, to the extent the trial court's denial of the motion for sanctions here involved an interpretation of the language of section 128.7, our review is de novo." (*Optimal Markets, supra*, 231 Cal.App.4th at pp. 921-922; see *Bockrath v. Aldrich Chemical Co.* (1999) 21 Cal.4th 71, 82.)

In *Optimal Markets* the trial court had referred the case before it to contractual arbitration. The prevailing party then requested sanctions for certain allegedly frivolous conduct that had occurred during the arbitration. The trial court denied the motion and the appellate court affirmed, finding that the trial court had not expressly asserted continuing jurisdiction over the matter, but had stayed all activity in the judicial action. Thus, the analysis applied, that " 'the action at law sits in the twilight zone of abatement with the trial court retaining merely a vestigial jurisdiction over matters submitted to arbitration.' [Citation.]" (*Optimal Markets, supra*, 231 Cal.App.4th at p. 923.)

In *Optimal Markets, supra*, 221 Cal.App.4th 912, 924 the court cited to *Titan/Value Equities Group, Inc. v. Superior Court* (1994) 29 Cal.App.4th 482, 487-488, for the concept that once a matter is sent to arbitration, unless the parties have agreed to withdraw the controversy from arbitration, the court should not take other merit-related

judicial acts. "In the interim, the arbitrator takes over. It is the job of the arbitrator, not the court, to resolve all questions needed to determine the controversy. [Citations.] The arbitrator, and not the court, decides questions of procedure and discovery. [Citations.] It is also up to the arbitrator, and not the court, to grant relief for delay in bringing an arbitration to a resolution." (*Ibid*.) In *Optimal Markets,* the court's jurisdiction did not include awarding sanctions for bad conduct that occurred during the arbitration. (*Optimal Markets, supra,* at p. 924.)

## B. Analysis

Here, the probate court was authorized to implement the settlement agreement by appointing the arbitrator, and the court was not required to accept Douglas's vague challenges to the appointment, at those ex parte proceedings. Douglas then filed his May 1, 2012 rescission petition to object to the arbitrator's appointment (for lack of proper disclosures under AAA rules). The disclosure objections were again discussed at the hearing on the petition, and were again found to be made without any justification.

In Douglas's June 8, 2012 renewed motion to vacate, he continued to argue he was entitled to unilaterally rescind the agreement for lack of receipt of a check under the settlement terms. He also stated he no longer wanted to be subject to a settlement agreement that provided he could not appeal or obtain a trial de novo on the arbitration decision. The probate court could properly consider those items to be "buyer's remorse," not new facts, and thus to be inappropriate subjects for reconsideration of the

25

appointment under section 1008, the basis of the June 8, 2012 renewed motion to vacate. In turn, that conclusion supported the sanctions award under section 128.7.

Douglas alternatively argues that the probate court could not, as a matter of law in awarding sanctions, rely upon activity in a different tribunal or court (i.e., his appellate filings, as opposed to his probate filings). He cites to *Optimal Markets*, *supra,* 221 Cal.App.4th 912, which is distinguishable as dealing with a separate arbitral forum, not with two phases of civil court proceedings, as here. In any case, even if we disregard Douglas's unsuccessful, dismissed previous appeal, the facts remain that the arbitrator was properly appointed and was given the authority to resolve the disputes about the settlement agreement that had occurred up until the time of the hearing. Douglas raised no meritorious "reconsideration" argument in his petition or motion for relief regarding the appointment, nor about his release claims. He did not show that the settlement agreement failed to support the appointment of the arbitrator, nor that there was any excessive scope of submission of issues. Under an objective standard, sanctions were properly imposed for his continued pursuit in court of the rescission-related arguments. (*Id.* at pp. 921-922.)

Even assuming section 128.7 imposes "a lower threshold for sanctions," i.e., solely a finding that the conduct was "objectively unreasonable," there is still a discretionary element to the award, which the court "may" make. (§ 128.7, subd. (c); *Guillemin v. Stein, supra,* 104 Cal.App.4th 156, 167.) The probate court could well conclude that Douglas's renewed motion was presented primarily for an improper purpose, at least for

26

causing unnecessary delay or needless increase in the cost of litigation, due to its lack of well-founded claims or contentions under existing law.  (*Ibid*.)  Section 128.7, subdivision (d) allowed the court to impose monetary sanctions "sufficient to deter repetition of this conduct or comparable conduct by others similarly situated," including "reasonable attorney's fees and other expenses incurred as a direct result of the violation."  The court had a sufficient basis for the award and gave an adequate explanation for the ruling, and we affirm it.  (§ 128.7, subd. (e).)

V

*MOTION FOR SANCTIONS ON APPEAL*

In light of the above conclusions, that the record supports the orders and judgment and that no legitimate bases for challenging them have been raised, we consider Martin's request that this court impose additional monetary sanctions on Douglas.  In his motion filed April 17, 2014, he argues that this appeal was meritless and he seeks $49,918.84 in attorney fees and costs.  (Cal. Rules of Court, rule 8.276(a).)  Douglas's opposition to the motion has been received and considered.

Martin further gave notice that an order might issue, to compensate this court for its own costs of processing a frivolous appeal.  (*Kleveland v. Siegel & Wolensky*, *LLP* (2013) 215 Cal.App.4th 534, 560; *Pierotti v. Torian* (2000) 81 Cal.App.4th 17, 35-36 (*Pierotti*).)  At this stage of the proceedings, we decline to make such a court reimbursement order.

A.  Authority

A reviewing court "may add to the costs on appeal such damages as may be just" when that court determines that an appeal "was frivolous or taken solely for delay." (§ 907.)  Standards for evaluating whether an appeal is frivolous are set forth in *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 (*Flaherty*), including both an objective and a subjective standard.  An appeal is frivolous "when it is prosecuted for an improper motive--to harass the respondent or delay the effect of an adverse judgment--or when it indisputably has no merit--when any reasonable attorney would agree that the appeal is totally and completely without merit."  (*Ibid.*)

"The subjective standard looks to the motives of the appealing party and his or her attorney, while the objective standard looks at the merits of the appeal from a reasonable person's perspective.  [Citation.]  Whether the party or attorney acted in an honest belief there were grounds for appeal makes no difference if any reasonable person would agree the grounds for appeal were totally and completely devoid of merit."  (*Cox v. County of San Diego* (1991) 233 Cal.App.3d 300, 313.)

The subjective and objective standards may be considered together, in evaluating any substantive lack of merit of the legal positions taken by the appellant.  (*Millennium Corporate Solutions v. Peckinpaugh* (2005) 126 Cal.App.4th 352, 360, fn. 5.)  Sanctions should be sparingly used to "deter only the most egregious conduct."  (*Flaherty*, *supra*, 31 Cal.3d at p. 651.)  If an appeal merely lacks merit, that determination alone will not

establish that it is frivolous in nature. (See *Dodge, Warren & Peters Ins. Services, Inc. v. Riley* (2003) 105 Cal.App.4th 1414, 1422.)

"We impose a penalty for a frivolous appeal for two basic reasons: to discourage further frivolous appeals, and to compensate for the loss that results from the delay." (*Pierotti, supra,* 81 Cal.App.4th 17, 33; *Flaherty*, *supra*, 31 Cal.3d at p. 651.) The courts may consider the cost of attorney fees on appeal, "the degree of objective frivolousness and delay; and the need for discouragement of like conduct in the future." (*Pierotti, supra*, at pp. 33-34.)

### B. Analysis of Record

Martin seeks compensation for the attorney fees he, as trustee, has incurred in responding to this meritless appeal. He complains that he was required to respond to Douglas's rescission argument based on nonperformance, until Douglas withdrew it in his reply brief at least "for purposes of this appeal only." Martin assumes that the arbitrator had some kind of probate court-related equitable power to allocate expenses, whether or not the settlement agreement conferred it, but he did not fully discuss the authorities in that respect. Martin mainly relies on the saga of the arbitration, disqualifications, prior appeal, and the rest of the alleged "harassment" by Douglas.

In opposition, Douglas takes the position that the "settled litigation went into a tailspin when Martin suddenly assessed Douglas's fees incurred before the effective date of the settlement agreement. By Martin's unilateral dictum, a major benefit of the settlement agreement to Douglas vanished." Douglas continues to assert that he

29

legitimately raised arguments about the interpretation of the settlement agreement, and such arguments were subject to de novo review on appeal regarding the legal limitations upon the arbitrator's powers, as defined by the agreement. Douglas points out that the probate court's tentative ruling originally agreed with his position.

In applying the above standards, we are not satisfied that any reasonable person must agree that all of Douglas's grounds for appeal "were totally and completely devoid of merit." (*Cox v. County of San Diego*, *supra*, 233 Cal.App.3d 300, 313.) Douglas presented at least some colorable, although unsuccessful, claims for relief. He did not fail to present an adequate appellate record, nor attempt to impugn the opposing party's character without any factual support in the record. (See, e.g., *Pierotti, supra,* 81 Cal.App.4th at p. 32 & fn. 9.) Neither party, however, completely explained the effect of the probate court's order for further arbitration on Douglas's remaining rescission issues, if any.

It is most regrettable that the arbitration and probate court proceedings, together with the process of appellate review, have consumed so much time and money. However, the issues presented on appeal are complex enough in nature to have required some degree of diligent analysis for resolution. For these reasons, we deny Martin's request for sanctions. However, since Martin has prevailed, Douglas shall bear Martin's ordinary appellate costs in this appeal, and consistent with the prior orders, they shall be chargeable to his share of the trust estate.

DISPOSITION

The judgment and orders are affirmed. The denial of the motion to dismiss the appeal is confirmed. The motion for sanctions on appeal is denied, with the exception that Douglas shall bear Martin's ordinary appellate costs in this appeal, and consistent with the prior orders, they shall be chargeable to Douglas's share of the trust estate.

HUFFMAN, Acting P. J.

WE CONCUR:

McINTYRE, J.

AARON, J.