Filed 11/22/13  Estate of Sprott CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| Estate of BEARL SPROTT, Deceased. | B237989<br>(Los Angeles County<br>Super. Ct. No. P421084) |
| WELLS FARGO BANK, N.A.,<br><br>        Petitioner and Respondent,<br><br>        v.<br><br>DANIEL SPROTT,<br><br>        Objector and Appellant. | |

        APPEAL from an order of the Superior Court of Los Angeles County,
Mary Thornton House, Judge.  Affirmed.

        Daniel Sprott, in pro. per., for Objector and Appellant.

        Samuel D. Ingham III for Petitioner and Respondent.

_____

Daniel Sprott appeals from an order by the probate court awarding sanctions against him in the amount of attorney fees and costs incurred by Wells Fargo Bank, as trustee for a testamentary trust, and an appointed guardian ad litem for the minor beneficiaries. The court did not abuse its discretion in awarding the sanctions, and we affirm the order.

## BACKGROUND

Bearl Sprott died in 1959. An April 1964 "ORDER SETTLING FINAL ACCOUNT, APPOINTING TRUSTEES OF TESTAMENTARY TRUST, AND DECREE OF DISTRIBUTION" (Trust Order) provided that the trust's duration was until "the death of the last person entitled to any income or benefits," or 21 years after the death of the last children or grandchildren living when Bearl Sprott died, "for as long a period as allowed by law." The trust was funded with $344,758.16 in cash. The Trust Order provided that the trustees "shall use the income of said trust estate for the education and training of any and all of the blood issue and their blood descendants of testator that shall desire to take advantage thereof, . . . for a fulltime college course at any fully accredited college or university of their choice . . . ." The Trust Order also stated that the trustees had discretion to provide for beneficiaries who became disabled. If the trustees deemed it necessary, they could make additional distributions to beneficiaries for their proper support and education, taking their financial resources and income into consideration. Wells Fargo Bank, N.A. (Wells Fargo, or trustee) is the trustee for the trust. Daniel Sprott (Sprott), one of Bearl Sprott's grandchildren at the time of his death, and his children Barbara, Richard, Matthew, David, and Michael Sprott, were among the trust beneficiaries. In October 2011, the filing date of the order appealed from, the fair market value of the trust was approximately $300,000, with an annual income of approximately $8,000.

In September 2007, Sprott wrote a letter to the trust demanding that 24 beneficiaries be removed from the list of beneficiaries because they were not "known by the last name of 'Sprott,'" and threatening legal action against Wells Fargo if it did not

2

comply. In response, in October 2007 Wells Fargo filed a "Petition for Order Ascertaining Beneficiaries" clarifying that the 24 were indeed blood issue of Bearl Sprott who, as a result of marriage, did not use the last name "Sprott." Sprott first filed an objection requesting that the petition not be heard until he obtained counsel, and later (represented by counsel) filed an objection to the petition. Sprott also filed, in pro. per., a "Motion for Reconsideration," apparently before receiving a court order granting the trustee's petition. The court granted Wells Fargo's petition on October 23, 2008, based on the trust's provision specifically excluding from disqualification any beneficiary who changed his or her name as a result of marriage.

In January 2010, Wells Fargo filed a verified "PETITION FOR ORDER MODIFYING TRUST DUE TO CHANGED CIRCUMSTANCES," stating that the fair market value of the trust had decreased by half in just two years, as a result of extensive distributions under the discretionary provisions of the Trust Order. Wells Fargo therefore recommended the modification of the trust by adding new language providing that annual distributions for college educational expenses were limited to five percent of the value of the trust's assets at the beginning of each year to be paid from trust income, and to the extent that income was not sufficient, from the trust principal. On March 5, 2010, Sprott filed in pro. per. an "OBJECTION TO MODIFICATION OF TRUST: FRIVOLOUS & WASTE OF TRUST ASSETS." The objection argued that only trust income should be used. In a pro. per. "ADDENDOM [sic] OBJECTION," Sprott argued that if given discretion, the Trustee would favor other, less needy family members over Sprott's family. Sprott also complained that the Trustee had not provided financial assistance when he was hospitalized for a heart attack. The court ordered the appointment of a guardian ad litem, Lawrence J. Kalfayan, to represent minor and unascertained trust beneficiaries.

After a hearing, the court ordered the parties to participate in mediation. At a further hearing in September 2010, the parties reported that three meetings with a mediator had not resolved the issues. Sprott objected that Kalfayan was subject to a

3

conflict of interest, in that he was representing not only minors but unborn potential beneficiaries, and expressed his concerns that his sons now attending college might not receive enough to remain in school. The court ordered further briefing.

Kalfayan filed a supplemental report, stating that in order to accommodate one of Sprott's objections, he supported an order requiring no modification of the trust language. He also supported limiting annual distributions to five percent of the fair market value of the trust, and allowing for trustee discretion within that fixed amount. The report also noted that at the current rate of distribution, the trust would be completely exhausted by the time Sprott's two youngest children were ready to enroll in college. Sprott filed another objection, accusing Kalfayan of a conflict of interest in that he would favor the wealthy families over Sprott's family. Wells Fargo filed a response to the objection, noting that the trust corpus had diminished in the nine months since the filing of Sprott's objections, due to distributions and the cost of litigation. Pursuant to a request by Kalfayan based on the conflict identified by Sprott, the court ordered that Sprott's children be excluded from the class of beneficiaries represented by Kalfayan. The court declined to appoint an additional guardian ad litem for Sprott's children. Sprott filed additional briefing, continuing to object on several grounds. On November 5, 2010, Sprott filed a pro. per. and in forma pauperis "Petition for Order Restricting Further Restrictions for Persons Not Born with the Name 'SPROTT.'"

The court signed a decision dated November 29, 2010, stating: "It is the duty of this court to adhere as closely to the testamentary intent of Bearl Sprott; the compromise reached between Wells Fargo and the [guardian ad litem], after considering the concerns of Daniel Sprott, comprises this goal." The court pointed out that the trust document made no provisions for a "need analysis" in determining distributions. In an "ORDER INSTRUCTING TRUSTEE," filed December 28, 2010, the court noted that the scope of Kalfayan's representation as guardian ad litem was modified to exclude Sprott's children. The order denied the request for modification without prejudice, and instructed Wells Fargo to make distributions for educational purposes in an amount not more than five

4

percent of the net fair market value of the trust assets, paid from income and, if income was insufficient, from principal. The order included distribution guidelines.[1]

On March 2, 2011, Wells Fargo filed another petition for an order modifying the trust based on changed circumstances. "The proposed modification would deem a beneficiary whose litigation concerning this trust causes him or her to qualify as a 'vexatious litigant' as defined in Code of Civil Procedure [section] 391[, subdivision] (b) a 'Vexatious Litigant Beneficiary.' Any mandatory or discretionary distributions which a Vexatious Litigant Beneficiary would otherwise receive from this trust would be reduced dollar for dollar by the reasonable costs of litigation with the Vexatious Litigant Beneficiary incurred by the trustee." The petition also requested orders determining that Sprott was a vexatious litigant beneficiary. Sprott filed in pro. per. and in forma pauperis a motion to dismiss the petition, and an objection to paying the guardian ad litem fees and costs. On April 27, 2011, Sprott also filed a pro. per. "INNOCENCENT [sic] OF VEXATIOUS LITIGANT CHARGE: **DEMAND FOR JURY TRIAL**" as well as a request for change of venue and an objection to the modification, arguing: "Wells Fargo Bank is threatening to **'euthanize'** Daniel Sprott if he continues to exercise his right of due process under the law."

Wells Fargo filed an amended petition to modify the trust on May 13, 2011, requesting that the trust "deem a beneficiary whose litigation concerning this trust meets specific standards to be an 'Injurious Beneficiary,'" and seeking an order determining that Sprott was an injurious beneficiary. Kalfayan, the guardian ad litem, filed a report stating that he supported the petition. Sprott filed an "INNOCENCENT [sic] OF **'INJURIOUS BENEFICIARY'** CHARGE: **DEMAND FOR JURY TRIAL**," which

_____

[1] Sprott and his minor sons Michael and David filed a pro. per. appeal from the order. We dismissed the appeal for lack of jurisdiction, concluding that Sprott and his sons lacked standing to appeal, and ordered each party to bear its own costs; no attorney fees were awarded. We draw some of the operative facts from the statement of facts in our unpublished opinion dismissing Sprott's earlier appeal, *In re Estate of Sprott* (Oct. 26, 2012, B230531) [nonpub. opn.].

5

also requested appointment of a new trustee, and a change of venue, made a request for mediation, and further objections to the trust modification, and asked for a continuance to obtain legal counsel. Sprott argued the trustee was acting in bad faith and with malice. At a hearing on June 17, 2011, with Sprott representing himself, the trial court noted that it had yet to adjudicate whether Sprott "ha[s] been filing . . . repeatedly frivolous petitions," but the trust was being dissipated by the cost of responding. The court suggested that Wells Fargo proceed under Code of Civil Procedure section 128.5[2] rather than requesting a modification of the trust, and denied Wells Fargo's amended petition.

On July 28, 2011, Wells Fargo filed the motion for sanctions. The motion argued that Sprott's litigation had cost the trust over $100,000, Sprott's sole purpose was to benefit himself and his family, and although he had been unsuccessful, he continued without regard to the cost to the other beneficiaries. His actions were in bad faith and were frivolous. The motion requested instructions to the effect that Sprott's future distributions would be reduced by the amount of the sanctions until the amount was paid in full. The motion listed 17 matters that resulted from Sprott's actions. Sprott filed an opposition with points and authorities, and a demand for jury trial. Sprott argued that he acted in good faith because he was acting to protect and provide for his family, and because he was known to have good character in his community. Sprott also argued that the trustee sought to use the distributions to pay its legal fees "and let Mr. Sprott die," as he would no longer receive distributions that he needed for medical care.

At a hearing on September 30, 2011, Sprott argued that he was not acting in bad faith; instead he was "outmanned," "like a David and Goliath," as he had no money to hire an attorney. He continued to argue that Kalfayan's appointment as guardian ad litem discriminated against his family in favor of wealthier beneficiaries. The court responded: "Mr. Sprott, this is the problem that exists right how. You have made the same argument over and over and over again. You've made, I think, 16 petitions." It was unfortunate

---

[2] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

6

that Sprott was unrepresented, but Sprott was held to the same level as an attorney.  The court explained:  "I think you're confusing bad faith with having a bad character.  And that's because, in a legal sense, frivolous or tactics that are cause for delay, don't necessarily mean the person who's making—doing those actions has a bad character, but that the actions of the continual filing in the face of the arguments having already been determined—or the theme of the arguments having been determined is what we're talking about here."

The court issued its decision on the motion on October 28, 2011.  The decision noted that if Sprott's arguments had been successful, the outcome would benefit his immediate family to the detriment of other trust beneficiaries (because those with the last name "Sprott" numbered 13, of which Sprott's family would be seven, in contrast to the 44 beneficiaries currently entitled to distributions).  Every judicial officer reviewing Sprott's arguments since 2007 had told him that the trust instrument did not require that only those surnamed "Sprott" receive distributions, and had rejected the argument that wealthier beneficiaries should receive a smaller distribution amount.  The court referred to the list of the petitions and motions included in the motion for sanctions as made by Sprott or required to be made in response to Sprott's litigation, and stated that all but two had been decided adversely to Sprott.[3]  The court concluded:  "Daniel Sprott's actions were calculated not only to cause delay but were also (1) intended to alter the terms of the trust so as to benefit his own children, and (2) were frivolous in that the positions he took were not supported by legal authority or the plain language of the trust document.  The rulings of the court made it clear to Daniel Sprott that his arguments were without merit, yet he continued to re-make them."  These tactics were "frivolous and injurious to the other trust beneficiaries" because the trustee, Wells Fargo, had expended $119,783.55 in attorney fees and costs and had also paid the guardian ad litem's fees and costs of

---

[3] These two included the prior appeal which we later dismissed for lack of standing, and the amended petition to modify the trust and declare Sprott an injurious beneficiary, which the court had denied.

7

$14,181.70.  The other beneficiaries should not have to share in those costs.  The court awarded as sanctions attorney fees and costs of $91,125 incurred by Wells Fargo[4] and $14,181.70 in fees and costs incurred by the guardian ad litem, to be deducted from Sprott's discretionary distributions.

Sprott filed this timely appeal in pro. per.

## DISCUSSION

Under its equitable powers and its authority to administer the trust, as well as under section 128.5,[5] the trial court has the authority to charge one beneficiary's share of the trust for the attorney fees and costs incurred by the trust in defending against the frivolous claims of that beneficiary.  (*Estate of Ivey* (1994) 22 Cal.App.4th 873, 882–883; *Rudnick v. Rudnick* (2009) 179 Cal.App.4th 1328, 1334–1335; see *Wells Fargo Bank v. Superior Court* (2000) 22 Cal.4th 201, 213, fn. 4.)  As in *Estate of Ivey*, *supra*, 22 Cal.App.4th at page 880, the court in this case found that the beneficiary's (Sprott's) court filings were frivolous and in bad faith.  Further, the trial court concluded that Sprott's actions were "intended to cause unnecessary delay."  (§ 128.5, subd. (a).)

"On appeal, our function is limited to determining if there is any substantial evidence to support the trial court's order.  We may not reweigh the evidence or substitute our discretion for that of the trial judge. [Citations.]" (*Estate of Ivey*, *supra*, 22 Cal.App.4th at pp. 881–882.)  The trial court's order is amply supported by the record.

As we describe in some detail above, Sprott wrote to the trust in 2007 arguing that the beneficiaries who did not have the surname "Sprott" should be removed from the list of beneficiaries.  In response, the trust filed a petition in the probate court, which Sprott

---

[4] The court reduced the attorney's hourly rate to reach this total.

[5] Section 128.5, subdivision (a), provides that the court may order a party "to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay," including in subdivision (b) making or opposing motions.  Subdivision (c) provides that the court's order "shall recite in detail the conduct or circumstances justifying the order."

8

opposed, represented by counsel.  (Subsequently Sprott proceeded in pro. per.)  The court granted the petition based on a trust provision specifically excluding from disqualification those with a different last name as a result of marriage.  In 2010, Sprott objected to the trustee's petition to modify the trust given a drastic decrease in its fair market value, by arguing that the trust should be limited to distributions from income only, the trustee would favor wealthier families than his, and the trust had failed to help him when he was hospitalized with a heart attack.  After the court appointed Kalfayan as guardian ad litem for the minor and unborn beneficiaries, and after three fruitless meetings with a mediator, Kalfayan filed a supplemental report attempting to accommodate Sprott, who filed an objection that Kalfayan had a conflict of interest.  The trial court excluded Sprott's children from the class represented by Kalfayan.  Sprott continued to object on the previously rejected ground that only those with the surname "Sprott" should receive distributions.  The court entered an order allowing the modification that Sprott opposed.  He appealed and we dismissed his appeal for lack of standing.  Wells Fargo then filed petitions requesting modification of the trust to declare Sprott a vexatious litigant and an injurious beneficiary; Sprott opposed these petitions and demanded a jury trial, the appointment of a new trustee, and a change of venue, arguing that the trustee was acting in bad faith and with malice.  At the court's suggestion Wells Fargo filed another petition for sanctions under section 128.5, which Sprott opposed, arguing that Wells Fargo was acting in bad faith (including by attempting to deprive him of the money he needed for his medical care).  He continued throughout to assert that his family was being discriminated against in favor of wealthier beneficiaries.

The evidence supports the trial court's conclusion that Sprott's objections were frivolous, as they were "totally and completely without merit."  (§ 128.5, subd. (b)(2)(A).)  Sprott's continual reassertion of his rejected objections also supports a finding that they were frivolous because they were "for the sole purpose of harassing an opposing party."  (*Id.* at subd. (b)(2)(B).)  Further, we will not second-guess the trial court's determination that Sprott's actions were in bad faith, as that determination is

9

supported by Sprott's repeated assertion of objections that had as their goal only the enrichment of Sprott and his children, at the expense of most of the trust beneficiaries and to the detriment of the trust, which was required to spend more than $100,000 in legal fees (and whose value at the time of the sanctions order was approximately $300,000). Finally, substantial evidence supports the trial court's finding that Sprott's actions were for purposes of delaying the implementation of the trust's requested modification in the manner of making distributions for educational expenses, which Sprott repeatedly claimed (to no avail) would benefit wealthier beneficiaries.

Sprott argues that the trial court's order was not sufficiently detailed. While the order did not list each of the filings that resulted from Sprott's frivolous arguments, it referred to the pages in the moving papers listing the petitions or motions made by Sprott or made in response to Sprott's arguments. The court identified the arguments that Sprott made and which the court had repeatedly rejected. The order was not deficient in detail.

As we do not reweigh the evidence or substitute our discretion for that of the probate court, and we perceive no abuse of discretion, we affirm the order awarding sanctions.[6]

---

[6] In his reply brief Sprott requests sanctions against Wells Fargo and its counsel in the event that we reverse the trial court's order. No sanctions are in order, as we affirm the court's order, and as Sprott's request for sanctions does not meet the requirements of California Rules of Court, rule 8.276(b)(1).

## DISPOSITION

The order is affirmed.  The parties are to bear their own costs.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


ROTHSCHILD, Acting P. J.


CHANEY, J.