Filed 3/3/16  Meraz v. Coleman CA2/8

## **NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| OSCAR MERAZ,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ROBERT COLEMAN,<br><br>Defendant and Appellant. | B262725<br><br>(Los Angeles County<br>Super. Ct. No. PS016520) |

APPEAL from orders of the Superior Court of Los Angeles County.  Adam Michael Sacks, Temporary Judge (pursuant to Cal. Const., art. VI, §21.).  Affirmed.

Diamond & Associates and David D. Diamond for Appellant.

Law Offices of Steven Graff Levine and Steven Graff Levine for Respondent.

_____

Appellant Robert Coleman and respondent Oscar Meraz were next door neighbors who fell into discord over a construction project at the Meraz home. Meraz obtained a permanent restraining order against Coleman. On appeal, Coleman contends: (1) the trial court applied an incorrect standard of proof; (2) the restraining order was not supported by substantial evidence; (3) it was error to award attorney fees; and (4) failure to advise Coleman of his right to counsel and his right not to incriminate himself requires reversal. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 3, 2014, Meraz obtained a temporary restraining order (TRO) restraining Coleman from entering the Meraz property. The order required Coleman to stay 5 yards away from Meraz and his wife Ruby when they were at home and 100 yards away from them when they were not at home. It also prohibited Coleman from taking, photographs of, or videotaping, Meraz, his wife or their children.

The TRO was returnable on October 29, 2014, which was the next scheduled hearing date. The appellate record does not include a reporter's transcript of the October 29, 2014 hearing. The minute order for that date indicates that Coleman and Meraz were both self-represented, stipulated to appointment of Commissioner Jeffrey M. Harkavy as the hearing officer, and that Coleman was advised of his constitutional right to an attorney. The minute order reflects witnesses testified, but without a reporter's transcript, we do not know the substance of any testimony. The court reissued the TRO and set a continued hearing for December 3, 2014. Statements made at the continued hearing suggest the reason for the continuance was to give the parties time to obtain counsel.

A. *The December 3, 2015 Hearing*

Coleman was self-represented at the continued hearing; Meraz was represented by counsel. The parties signed and filed a written stipulation authorizing attorney Adam Sacks as a Judge Pro Tem. Mid-hearing, Coleman asked for another continuance to

2

obtain counsel. Coleman explained he thought about getting a lawyer after the last continuance, but decided against it; he realized it was the wrong decision. The trial court denied the request.

Meraz testified that Coleman took pictures of Meraz and his wife while they were in their home and entered Merazes' property to take pictures of the construction workers. Meraz testified Coleman "threatened to ruin me. Kick me out of my house. Lose everything and leave me a disgrace to my family." Coleman threatened to "end" Meraz, which Meraz understood as a threat to his and his wife Ruby's safety. Coleman sometimes stood in his garage wearing boxing gloves and stared at Meraz and his wife as they arrived home. After Meraz installed a security system, Coleman began to make gestures to the security camera: "Make pointing gestures as if he was holding a gun on several occasions at the camera. As if he was holding a rifle on one occasion." Meraz knew Coleman owned guns. Coleman also took "his dog excrements aimed it at the camera and said on video, 'This is you, Oscar. This is for you.' "

On October 23, 2014, after Meraz had obtained the TRO, Coleman used "some sort of laser device" to burn out the security camera's night vision. Based on this incident, Meraz filed a vandalism report with the police. Meraz filed another police report on November 5, 2014, based on surveillance video showing violations of the TRO. Meraz does not feel safe in his home and fears for his life and his wife's life. Coleman has reported Meraz to City Building and Safety, OSHA, the Contractor's Licensing Board and the IRS.

Meraz's wife testified she is afraid to go home unless her husband is there because of the things that Coleman has done to her husband and because of the way Coleman stares at her when she is driving up the driveway. The Merazes' kitchen has a glass sliding door that faces a wall between the Meraz and Coleman properties; because Coleman looks over that wall and into their kitchen, Ruby is afraid to go into the kitchen.

Coleman testified he was "inundated with concrete dust" from the construction projects at the Meraz home. Coleman reported Meraz for not getting permits for the construction work. Coleman took photographs of the construction project and of the car

3

license plates of some of the people working on the project, but never trespassed onto Merazes' property. Coleman entered onto Merazes' property on one occasion, to turn off the gas when he smelled the odor of gas in his own yard. Coleman called Meraz "a sissy and a punch [sic]," but never threatened to "end" Meraz or to "ruin" him. Coleman explained he leaves the garage door open when he uses the punching bag in his garage for exercise. Coleman owned a gun, but his son took it to San Diego before the TRO was entered; Coleman has no other guns except for a BB gun. Coleman at first denied taking any photographs of Meraz or his family. He then admitted taking two photographs of Meraz but denied taking any photographs of Ruby while she was in the kitchen of the Meraz home. Coleman pointed a carpenter's laser at Merazes' surveillance cameras because, during its 360 degree revolution, it pointed into the Colemans' side yard.

Coleman's wife, Renee, testified she worked during the day. She never witnessed any confrontations between Coleman and Meraz. She never saw Coleman take pictures of Meraz or Ruby, only of the construction project. Coleman could not have taken pictures without her knowledge because they owned just one camera and she saw every picture on that camera when she downloaded the photographs. There are only two pictures of Meraz in the downloaded photographs, each of which shows Meraz walking across his backyard. Renee was shown a 12-second video which shows Coleman on the Coleman side of the wall that separates the Meraz and Coleman properties; Coleman can be seen taking photographs of Meraz and Ruby while they were in the kitchen of the Meraz home. The trial court described the video: "I saw you aiming the camera directly towards them when they were in their kitchen. Apparently, you are telling me you didn't take any pictures and so forth, and it seems like you did."

B. *The Restraining Order*

At the conclusion of the hearing, the trial court issued a restraining order against Coleman to remain in effect until December 3, 2017 (the restraining order). The trial court explained it had been "disinclined" to grant the restraining order based on the pleadings, but after seeing Coleman's "demeanor in court, and I understand you are not

4

an attorney. I understand this is hard for you. You've been – you've been very, very difficult with me. I think I've shown an abundance of patience and I don't find your testimony credible." The order required Coleman to stay five yards away from Meraz and Ruby when they were at home, and 100 yards away when the Merazes were not at home.

## C.    *The Motion for Rehearing and Reconsideration*

On December 15, 2014, Coleman's newly retained counsel filed a motion captioned "Notice of Motion and Motion for Rehearing, Reconsideration or New Hearing on Restraining Order, etc." The gravamen of Coleman's motion was that (1) the restraining order was not supported by sufficient evidence of harassment (i.e., activity that was not otherwise constitutionally protected); (2) because the construction project was subsequently completed, there was no evidence that the harassing behavior would continue; and (3) the December 3, 2014 hearing should have been before the judicial officer who presided over the hearing on October 29, 2014. Meraz opposed the motion and requested sanctions pursuant to Code of Civil Procedure section 128.5.

There is no reporter's transcript of any hearing on the motion for reconsideration; nor does any minute order reflect a hearing in court. Instead on March 2, 2015, the same hearing officer who presided over the December 3, 2014 hearing and issued the permanent restraining order signed an order denying the motion for reconsideration. The trial court's decision was attached to a clerk's minute order issued that date.

The trial court's decision denying the motion for reconsideration states in part:

> "There is no just basis for a rehearing as requested by Respondent [Coleman]. I hereby deny Respondent's frivolous motion and order that Respondent pay the Petitioner's counsel $2,000 in Attorney's fees under [Code of Civ. Proc.,] 128.5(b)(2) as requested. Respondent's motion is, put simply, completely without merit. I am very bothered that clearly counsel for Respondent does not even seem to know the general basic facts of the matter and brings up several irrelevant issues and others never heard before. The court rules that the Restraining Order was properly requested, was duly defended against by the Respondent, and was properly issued for three

5

years as the Petitioner had met his burden of proof. There is no reason for a new hearing to be granted and it is thus denied."

Coleman filed a timely notice of appeal.

## DISCUSSION

A. *The Burden of Proof*

On appeal, Coleman contends the trial court prejudicially erred in applying the preponderance of the evidence standard of proof, rather than the statutorily mandated clear and convincing standard (Code of Civ. Proc., § 527.6, subd. (i)), to the findings it was required to make to support a civil harassment order. He bases this contention on a confusing statement the trial court made just before announcing its ruling. Even assuming error, Coleman has not shown prejudice.

We review issues concerning the proper allocation of the burden of proof de novo. (*In re Marriage of Ettefagh* (2007) 150 Cal.App.4th 1578, 1585.)

Civil harassment restraining orders are governed by Code of Civil Procedure section 527.6, which allows a person who has suffered "harassment" to seek an order prohibiting the harassment. (Code Civ. Proc., § 527.6, subd. (a)(1) (§ 527.6).)[1] "If the judge finds by *clear and convincing evidence* that unlawful harassment exists, an order shall issue prohibiting the harassment." (§ 527.6, subd. (i), italics added; *Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 662.) " 'Clear and convincing' evidence means evidence of such convincing force that it demonstrates, in contrast to the opposing evidence, a high probability of the truth of the fact[s] for which it is offered as proof." (BAJI No. 2.62; see *Russell v. Douvan* (2003) 112 Cal.App.4th 399, 401.) Clear and convincing is a higher standard of proof than "preponderance of evidence," which is defined as "evidence that has more convincing force than that opposed to it. If the evidence is so evenly balanced that you are unable to say that the evidence on either side

---

[1] Section 527.6 has been amended. We refer to the statute as it was on December 3 2014, the day of the hearing.

6

of an issue preponderates, your finding on that issue must be against the party who had the burden of proving it." (BAJI No. 2.60.)

Here, the trial court described the standard of proof as follows:

> "The standard proof for a restraining order is different obviously than a criminal case. It is stronger than beyond a reasonable doubt. This is preponderance of evidence."

On its face, the statement makes no sense because a "preponderance of the evidence" is not "stronger than beyond a reasonable doubt." Our view of the statement is that either the trial court unintentionally misspoke and intended to communicate correctly that the applicable standard of proof was "less" than beyond a reasonable doubt but "more" than a preponderance of the evidence, i.e. clear and convincing, or the reporter took down the statement incorrectly. (See *People v. Seaton* (2001) 26 Cal.4th 598, 635 [rejecting argument based on isolated fragments of trial court's comments, taken out of context].) Our conclusion is reinforced by the trial court proceedings: neither party objected at the hearing to the trial court's statement, and any claimed misapplication of the burden of proof was not raised in the motion for rehearing and reconsideration which was filed after Coleman had retained counsel.

Even assuming the trial court erroneously applied the lesser preponderance of the evidence standard and that Coleman did not forfeit the issue by not raising it at the December 3, 2015 hearing or in his motion for rehearing and reconsideration (*In re Marriage of Hinman* (1997) 55 Cal.App.4th 988, 1002 [appellate court will not consider procedural defects that were not presented to the lower court]), we find no prejudice. We review errors in applying the correct burden of proof in proceedings of this nature under the harmless error standard of *People v. Watson* (1956) 46 Cal.2d 818, namely that there must be a reasonable probability a different result would have been reached but for the improper allocation of the burden of proof. (*Conservatorship of Maria B.* (2013) 218 Cal.App.4th 514, 532-533.) In *Conservatorship of Maria B., supra,* the trial court applied the preponderance of evidence burden of proof in ordering that a conservator could require the conservatee to undergo a serious and intrusive medical procedure. (*Id*

7

at p. 522.)  The Court of Appeal concluded that the clear and convincing evidence standard applied to the trial court proceedings.  (*Id.* at p. 528.)  The appellate court nevertheless affirmed the trial court's order, finding the error in the application of the burden of proof was harmless.

Citing *People v. Watson, supra,* the court stated:  "Although the trial court erred, we may not reverse the trial court's order granting [respondent's] petition unless [appellant's] counsel shows it is reasonably probable the trial court would have denied the petition had it applied the correct standard of proof.  We affirm the trial court's order granting the petition because [appellant's] counsel failed to make this required showing."  The court proceeded to review the evidence at trial to reach its finding of harmless error.

We do the same here.

Coleman has failed to show a different result was probable if the trial court had applied the clear and convincing standard.  This is because the trial court expressly found Meraz and Ruby credible and Coleman "dishonest."  The trial court elaborated:  "And I think that, you know, with respect to some of the things you've done, they were fairly reasonable.  But then you seemed to have gone too far and crossed the line.  [¶]  And from your demeanor today in court, I can see that in your personality and I haven't known you long time [sic], but I think you have to think very carefully about some of the things that you are saying and doing because they're not appropriate, okay.  And for you to tell the court when you are under oath under penalty of perjury that you never took a picture of them going in the kitchen.  And for me to watch a video of you having specifically done that, okay, and then you saw the video, and you are still insisting that you didn't do that.  That's a big cognitive disconnect that you have, sir, and that's very concerning to me, okay.  It's okay this is not a criminal matter.  You are not going to jail, but I am going to issue a restraining order . . . ."

Based on the entirety of the trial court's comments, and the substantial evidence of harassment, even if the trial court applied the wrong standard of proof, it is not probable there would have been a different result if the trial court had used the correct standard of proof.

B.    *Sufficiency of the Evidence*

Coleman contends the restraining order is not supported by substantial evidence. He argues the "majority of the evidence presented was benign and nothing that would create apprehension or fear in a reasonable person." He further argues that taking photographs and reporting Merazes' building and safety code violations to government agencies is constitutionally protected activity. We find no error.

The appropriate test on appeal from an order granting a civil restraining order "is whether the findings (express and implied) that support the trial court's entry of the restraining order are justified by substantial evidence in the record. [Citation.] But whether the facts, when construed most favorably in [the petitioner's favor] are legally sufficient to constitute civil harassment under section 527.6, and whether the restraining order passes constitutional muster, are questions of law subject to de novo review. [Citations.]" (*R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 188.)

Section 527.6 defines "harassment" as "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose." The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." (§ 527.6, subd. (b)(3), italics added.) The statute defines "credible threat of violence" as "a knowing and willful statement or course of conduct that would place a reasonable person in fear for his or her safety, or the safety of his or her immediate family, and that serves no legitimate purpose. (§ 527.6, subd. (b)(2).)

"Constitutionally protected activity is not included within the meaning of 'course of conduct.' " (§ 527.6, subd. (b)(1).) Generally, "[l]egitimacy of purpose negates harassment." (*Byers v. Cathcart* (1997) 57 Cal.App.4th 805, 812.) But taking photographs of a person through the windows of that person's residence is neither constitutionally protected nor does it necessarily have a legitimate purpose. It has been recognized in some states as the tort of "intrusion" which is akin to trespass. (See

9

Rest.2d Torts, § 625B; *Retuerto v. Brea Moving & Storage Logistics* (Ohio 2015) 38 N.E.3d 392, 407.)

Here, the evidence showed the following conduct by Coleman: (1) entering onto the Meraz property to take photographs of the construction project; (2) taking photographs of the Meraz family through their kitchen window; (3) holding up dog excrement to the Merazes' security camera and saying, "This is you, Oscar. This is for you;" (4) on several occasions making gestures at the security camera as if he was holding a gun; (5) destroying the security camera's night vision feature by shining a laser into the lens; and (6) making verbal threats to Meraz including to "ruin" Meraz, kick Meraz out of his home, cause Meraz to "lose everything," and cause Meraz to be a disgrace to his family. There was evidence that Coleman's repeated conduct had caused Meraz to fear for his and Ruby's physical well being; it had caused Ruby to be afraid to go home unless her husband was there; she was afraid to go into the kitchen.

Taken as a whole, this evidence was sufficient to show Coleman engaged in "a knowing and willful course of conduct directed at a specific person [Meraz] that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose" and which "would cause a reasonable person to suffer substantial emotional distress" and that the conduct "actually cause[d] substantial emotional distress to" Meraz and Ruby. (§ 527.6, subd. (b)(3).)

Coleman's argument that he had a legitimate purpose for some of his conduct does not compel a contrary result. It was not reasonable and served no legitimate purpose for Coleman to enter onto the Meraz property to take photographs, to intrude on the Merazes' privacy by taking photographs of them through their kitchen window, to threaten Meraz, to present excrement to the Merazes, or to destroy the Meraz security camera. As the trial court observed, even if some of what Coleman did was reasonable (e.g. taking photographs of the construction project while standing on his own or public property and reporting alleged violations to relevant agencies), the trial court reasonably found that Coleman's other actions crossed the line to civil harassment, which was made

10

worse by the cumulative effect of varied acts.  Substantial evidence supported that finding.

C.     *Coleman's Fifth Amendment Rights*

Coleman contends the restraining order should be reversed because he was not advised of his fifth amendment rights at the hearing on December 3, 2014, his request for a continuance to obtain counsel was denied, and the trial court improperly pressured him into agreeing to a permanent injunction.  We find no error.

We find no place in the record at which Coleman "agreed" to the preliminary injunction. At most, the trial court raised the question of a stipulated injunction.  When the inquiry produced no resolution, the trial court continued with the hearing.  Coleman cites no legal authority to support any of these contentions, and thus has waived these arguments.  " '[E]very brief should contain a legal argument with citation of authorities on the points made.  If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration.' [Citation.]" (*McComber v. Wells* (1999) 72 Cal.App.4th 512, 522.)

D.     *Attorney's Fees*

Coleman makes two arguments challenging the award of attorney's fees following Coleman's motion for rehearing and reconsideration:  First, there was no motion for attorney's fees. Second, the motion was not legally frivolous and thus did not support an award of attorney's fees.  We find no error.[2]

---

[2]     In the moving papers filed in the trial court, appellant described his motion at various times as one for reconsideration, rehearing, new trial and new hearing.  He continues this practice on appeal.  The trial court in its ensuing order characterized the motion as one for "rehearing and reconsideration."  For purposes of our disposition, it matters not what this motion was formally called, but we adopt the term "motion for rehearing and reconsideration" because that is what the trial court did.

11

We begin with the observation that the civil harassment statute, section 527.6, gives the trial court discretion to award costs and attorney's fees to the prevailing party. (§ 527.6, subd. (r).)  No showing of bad faith or frivolousness is required.  (*Krug v. Maschmeier* (2009) 172 Cal.App.4th 796, 802.)  But Meraz did not request attorney's fees pursuant to section 527.6, subdivision (r) in connection with Coleman's motion for hearing and reconsideration.  Instead, Meraz expressly requested in his opposition to the motion that he be awarded attorney's fees pursuant to section 128.5.  The trial court expressly granted attorney's fees pursuant to section 128.5, not section 527.6, subdivision (r).  Accordingly, we consider whether sanctions under section 128.5 were appropriate.[3]

Section 128.5 provides for an award of attorney's fees and costs "as a result of bad faith actions or tactics that are frivolous . . . ."  (§ 128.5, subd. (a).)  An attorney's fee award pursuant to section 128.5 must be based on "notice contained in a party's moving or *responding papers*; or the court's own motion, after notice and opportunity to be heard."  (§ 128.5, subd. (c).)  No separate motion is necessary and the adequacy of the notice depends on the circumstances of the case.  (*In re Marriage of Quinlan* (1989) 209 Cal.App.3d 1417, 1420.)  The trial court is "not bound by a strict accounting requirement in determining the amount of sanctions.  [Citation.]."  (*Id*. at p. 1421, fn. 1.)

The reviewing court's function "is limited to determining if there is any substantial evidence to support the trial court's order.  We may not reweigh the evidence or substitute our discretion for that of the trial judge.  [Citations.]"  (*Estate of Ivey* (1994) 22 Cal.App.4th 873, 881.)  We find substantial evidence supports the award in this case.

Coleman's procedural challenge to the sanction award is contrary to the record.  Meraz's opposition to the motion for rehearing and reconsideration was filed on December 23, 2014.  In his opposition, Meraz expressly requested attorney's fees in the amount of $2,000 pursuant to section 128.5, subdivision (b)(2).  Because the request for fees came in responding papers Meraz complied with the statutory method of giving notice.  Coleman did not address the sanctions request in his reply papers.  The hearing

---

[3]    Because we conclude the award was proper under section 128.5, we need not address respondent's point that the award was also reasonable under section 527.6.

12

on the motion for reconsideration did not take place until March 2, 2015, more than two months after Meraz's attorney's fees request was filed. Coleman had sufficient notice that Meraz was seeking sanctions in the form of attorney's fees.

Coleman's argument that the award is not supported by substantial evidence also fails. As discussed in the opposition to the motion, reconsideration may not be granted under Civil Code section 1008 unless it is supported by "new or different facts, circumstances or law." (Civ. Code, § 1008, subd. (b).) To the extent Coleman's motion was one under section 1008 for reconsideration, he produced no new evidence, no new law. Nor do we find any merit in Coleman's argument that his motion for rehearing and reconsideration was not frivolous because Coleman reasonably had argued that there was an "inconsistency in the proceedings." [4] For that argument, he points to the fact that two different bench officers heard various parts of the case, one on October 29 and another on December 3. Although it is true that different judicial officers presided over the two hearings, nothing in the record suggests two different judicial officers presided over the merits of the section 527.6 proceeding. The October 29, 2014 minute order states that witnesses were sworn and some testimony was presented. But, we know nothing of the nature of that testimony. At the December 3, 2014 hearing, the temporary judge did not state he was relying on anything that occurred at the earlier hearing. Nor does there appear to be any way he could have since there was no transcript of that hearing. Finally, on December 3, 2014, neither side objected to, or even discussed, the fact that a different temporary judge was presiding over the second hearing. [5] On this record, we find no

---

**4**     We do not understand what Coleman means by "inconsistency in the proceedings." To the extent he is alluding to the statutory power to grant a new trial for *irregularity* of the proceedings of the court (§ 657, subd. (1)), we find no irregularity.

**5**     Coleman limits his argument on the participation of two different judicial officers to support his claim that his motion for rehearing and reconsideration was not frivolous and, therefore, the award of attorney's fees was improper. To the extent his reply brief suggests that the use of two different judicial officers was an error that itself justifies reversal in this case, we reject it for the reasons stated in the text.

abuse of discretion in the trial court's award of section 128.5 sanctions in the amount of $2,000 for a frivolous motion.

## DISPOSITION

The restraining order is affirmed. The March 12, 2015 order denying Coleman's new trial motion for reconsideration and awarding sanctions is affirmed. Meraz shall recover his costs on appeal.


                                        RUBIN, J.

WE CONCUR:


    BIGELOW, P. J.


    GRIMES, J.